CHRISTUS HEALTH SOUTHEAST TEXAS d/b/a Christus St. Mary Hospital, Dubuis Health System, Inc. d/b/a Dubuis Hospital of Port Arthur, and Sreedhar Polavarapu, Appellants,

v.

Preston BROUSSARD, Individually and a/n/f of Dorothy Broussard, Deceased and a/n/f of Cody Broussard, Appellee.

No. 09–08–044CV.

Court of Appeals of Texas, Beaumont.

Submitted June 26, 2008.

Decided Sept. 11, 2008.

---

532

Erin E. Lunceford, Julie M. Redlinger, Munisteri, Sprott, Rigby, Newsom & Robbins, P.C., Houston, James B. Ewards, Donald S. Stephens, Edwards and Associates, Stafford, for Appellants.

David W. Ghisalbert, Law Office of John C. Osborne, P.L.L.C., Houston, for Appellee.

Before McKEITHEN, C.J., GAULTNEY and KREGER, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

In this accelerated appeal, Christus Health Southeast Texas d/b/a Christus St. Mary Hospital ("St. Mary"), Dubuis Health System, Inc. d/b/a Dubuis Hospital of Port Arthur ("Dubuis"), and Sreedhar Polavarapu, M.D. ("Polavarapu") challenge the trial court's orders denying their motions to dismiss the health care liability claim of Preston Broussard, individually and as next friend of Dorothy Broussard, Deceased and as next friend of Cody Broussard.[1] *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*) (Vernon Supp.2008). We hold that the expert report is deficient. Accordingly, we reverse the trial court's orders and remand the case to the trial court for further proceedings.

▬ As a preliminary matter, we consider Broussard's claim that Polavarapu failed to timely perfect his appeal. In an accelerated appeal, the notice of appeal must be filed within twenty days of the date on which the order is signed. Tex. R.App. P. 26.1(b). The trial court denied

Polavarapu's motion to dismiss on January 17, 2008. The trial court denied the motions to dismiss filed by Dubuis and St. Mary on the same day. Dubuis and St. Mary filed notice of appeal on February 1, 2008, within twenty days of the signing of the orders. Thus, Dubuis and St. Mary timely filed a notice of appeal in the case. Although the trial court denied the motions with separate signatures, all notices of appeal filed in the same case must be given the same docket number. *See* Tex. R.App. P. 12.2(c). Polavarapu contends the notice of appeal he filed on February 7, 2008, is timely pursuant to Texas Rule of Appellate Procedure 26.1(d) because it was filed within fourteen days after the first timely notice of appeal was filed. *See* Tex.R.App. P. 26.1(d). Even if we assume that Polavarapu could not rely on the notice of appeal filed by a party appealing a separately signed order, Polavarapu nevertheless filed his notice of appeal within the time for which an extension may be granted. *See* Tex.R.App. P. 26.3. An extension motion is necessarily implied if a notice of appeal is filed within fifteen days after it was due. *Verburgt v. Dorner,* 959 S.W.2d 615, 617 (Tex.1997). A party's mistaken belief that no extension was required because the notice of appeal was timely reasonably explains the failure to file a motion for an extension of time. *Hone v. Hanafin,* 104 S.W.3d 884, 886–87 (Tex.2003). Without deciding whether a single appellate timetable applied to the appeals of Polavarapu, Dubuis and St. Mary, we imply a motion for an extension to file a

---

1. *Broussard's petition does not explain how he has standing to bring a wrongful death and survivor claim or how he is acting "as next friend" of a deceased person. His capacity to pursue a claim on behalf of the Estate of Dorothy Broussard was not explained in the petition, and both St. Mary and Dubuis filed a verified denial of Preston Broussard's capacity. The expert report discussed infra states that Dorothy was a seventy-year-old married woman. The petition alleges Cody Broussard is Dorothy's ten-year-old son and that Preston Broussard is acting as Cody's next friend, but does not identify Preston's relationship to either Dorothy or Cody.*

notice of appeal, accept Polavarapu's explanation as reasonable, and grant the extension. Accordingly, Polavarapu timely perfected appeal.

Broussard's petition alleges that while Dorothy was awaiting discharge from a long term care facility under the control of Dubuis or St. Mary, the appellants removed Dorothy's finger pulse oximeter. Dorothy dislodged her breathing tube and suffered a hypoxic brain injury that allegedly resulted in her death. Broussard alleges the appellants prematurely ordered Dorothy's discharge and failed to safely monitor and restrain her. Broussard served the appellants with a copy of an expert report and curriculum vitae of Jon D. Peters, a board-certified neurologist. The single report serves with respect to both liability and causation issues as to all three defendants.

█ Polavarapu challenges the expert's qualifications to render an opinion on the care provided by an internal medicine physician. To provide an expert opinion regarding whether a physician departed from accepted standards of medical care, the expert must have knowledge of the accepted standard of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim and must be qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care. TEX. CIV. PRAC. & REM.CODE ANN. § 74.401(a)(2), (3) (Vernon 2005).

In his affidavit, Peters identifies himself as a board-certified neurologist currently in private practice in Reston, Virginia. Peters states that his report is based on his review of the medical records and "20 years of experience as a board certified Neurologist who practices in the same medical discipline as those medical service providers *who rendered neurological services* to Mrs. Broussard." Peters explains his qualifications to render an expert opinion in this case, as follows:

I am familiar with the standard of care for a Neurologist, which is a branch of medicine specializing in the diagnosis, care and treatment of the Nervous System. In my career to date, I have taken care of and treated numerous people with neurological problems such as Mrs. Broussard, and am familiar with the consequences arising out of a lack of oxygen reaching the brain. I am familiar with the facts of this case from my review of the medical records provided to date. My opinions expressed herein are based on my education, training, clinical experience as [a] Neurologist caring for patients in the same or similar situation as Dorothy Inez Broussard, and review of the medical records produced to date.

█ Peters does not practice in the same specialty as does Polavarapu. Peters says that he is familiar with the standard of care for a neurologist, but Polavarapu is an internal medicine physician. A physician expert need not be a specialist in the defendant's particular area of practice if the subject matter of the claim is common to and equally recognized and developed in more than one field of practice, and the expert is qualified in one of those fields. *Blan v. Ali,* 7 S.W.3d 741, 746–47 (Tex.App.–Houston [14th Dist.] 1999, no pet.). According to Peters's report, Dorothy was being treated for pneumonia and acute respiratory deficiency, not a neurological disorder. Peters does not state that he is familiar with the standard of care for an internal medicine physician treating intubated patients for pneumonia and acute respiratory deficiency, nor does he state that the treatment of such patients is common to both neurology and internal medicine. Peters states that he has treated patients with Dorothy's neuro-

logical condition, but he does not state that Polavarapu was treating Dorothy for a neurological condition. Thus, Peters does not explain how he is qualified to express an opinion on the standard of care set forth elsewhere in his report. Accordingly, the trial court abused its discretion in overruling Polavarapu's objections to Peters's report.

■ St. Mary and Dubuis objected to Peters's report and challenge the expert's qualifications to render an opinion on the standard of care applicable to St. Mary and Dubuis. St. Mary and Dubuis also argue the expert's affidavit is deficient because Peters fails to distinguish St. Mary from Dubuis.

■ Broussard challenges our jurisdiction over the appeal by St. Mary and Dubuis. He argues that Section 74.402(b) applies to an "individual" defendant health care provider and claims a hospital cannot appeal because it is not an individual. Broussard misconstrues the applicable statutes. Section 74.402 concerns the qualifications for an expert witness; subsection (b) adds an additional requirement if the defendant is an individual, but nothing in Section 74.402 limits an appeal taken pursuant to Section 51.014(a)(9) to defendants who are individuals. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(9) (Vernon 2008); TEX. CIV. PRAC. & REM.CODE ANN. § 74.402(b) (Vernon 2005). Broussard contends St. Mary and Dubuis departed from the accepted standards of administrative services directly related to health care. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(13) (Vernon 2005). Thus, Broussard is asserting a health care liability claim. *See id.* St. Mary's and Dubuis's objections to Broussard's expert report invoked Section 74.351(b) of the Civil Practice and Remedies Code; accordingly, we have jurisdiction over their appeal from the denial of their motion to dismiss. *See*

TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b) (Vernon Supp.2008); TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9).

To express an expert opinion on liability as to St. Mary and Dubuis, Peters must have knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim and be qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care. TEX. CIV. PRAC. & REM.CODE ANN. § 74.402(b) (Vernon 2005). To determine whether Peters is qualified on the basis of training and experience, the court must consider whether he is certified by a licensing agency or has other substantial training or experience in the area of health care relevant to the claim, and whether he is actively practicing health care in rendering health care services relevant to the claim. TEX. CIV. PRAC. & REM.CODE ANN. § 74.402(c) (Vernon 2005).

Relying on *Memorial Hermann Healthcare System v. Burrell,* Broussard argues that Peters need only show that he actively practices health care in an area relevant to the treatment of patients with fluctuating mental status. In *Burrell,* the report at issue stated that the doctor offering the opinion was familiar with the standard of care to prevent and treat decubitus ulcers and had experience instructing nurses in the proper preventative techniques. *Memorial Hermann Healthcare Sys. v. Burrell,* 230 S.W.3d 755, 759 (Tex.App.–Houston [14th Dist.] 2007, no pet.). The appellate court held the expert adequately linked his experience to the treatment of decubitus ulcers by the nursing staff. *Id.* at 761. Here, however, Broussard specifically limited the claim against St. Mary and Dubuis to what Broussard characterized as an "administrative decision" to prematurely dis-

charge Dorothy. Peters does not explain how his experience with treating patients with fluctuating mental status gives him expertise regarding a hospital's "administrative decision" about the circumstances under which a hospital can disregard a doctor's discharge order.

In response to the motion to dismiss, Broussard argues that "[t]his lawsuit does not concern itself with the acts of the nursing staff. Rather, it concerns the administrative decisions of the Defendant Hospital which caused the premature death of [Dorothy]." Broussard argues that Peters need not practice in the same field as St. Mary and Dubuis so long as he has knowledge of the accepted standards of care for the claim involved in the lawsuit. According to Broussard, "[t]he injury claimed in this lawsuit deals with a series of negligent administrative decisions" beginning with the "premature decision to discharge Mrs. Broussard from the long term care facility located on the third floor of the Defendant Hospital" which "led to the wrongful decision to remove a finger light device attached to Mrs. Broussard's index finger" and "as a result of the decision to discharge Mrs. Broussard, she was ordered not to be physically restrained." Because Dorothy "had a history of fluctuating mental capacities" the "failure to safely monitor and restrain Mrs. Broussard left her unobserved and unattended by the Defendants when Mrs. Broussard knocked the breathing tube out of her trachea."

To offer his expert opinion on the standard of care applicable to the health care facilities, Peters's expertise must be evident from the four corners of his report and curriculum vitae. *See generally Am. Transitional Care Ctrs. of Tex. v. Palacios,* 46 S.W.3d 873, 878 (Tex.2001). Peters's report and curriculum vitae explain that he has active staff privileges at Reston Hospital, where he sits on the credentials committee, and that he is on the utilization review subcommittee for the neurology section of Fairfax Hospital. As Broussard argued in his response to the motion to dismiss, "this case concerns the Defendant Hospital's decision to abandon Mrs. Broussard, not whether the nursing staff followed protocol." The report does not state that Peters is familiar with hospital administration or the standards to be applied to implementing an attending physician's discharge order. The fact that Peters is on staff at a hospital and serves on that hospital's credentials committee does not establish that he possesses specialized knowledge of the protocols, policies, or procedures a hospital of ordinary prudence would have had in place in determining when a facility should disregard a discharge order. *See Reed v. Granbury Hosp. Corp.,* 117 S.W.3d 404, 409 (Tex. App.–Fort Worth 2003, no pet.).

Peters's report and curriculum vitae do not explain how Peters's committee assignments and experience on staff at Reston Hospital make him familiar with the standards applied by hospitals under these circumstances. Thus, the trial court abused its discretion in overruling St. Mary's and Dubuis's objections to Peters's report.

CONCLUSION

■ The trial court erred in overruling the objections to the expert report served by Broussard and in denying the motions to dismiss Broussard's health care liability claims against Polavarapu, St. Mary, and Dubuis. When an appellate court reverses the trial court's denial of a motion to dismiss a health care liability claim due to deficiencies in the elements of the report, the appellate court may remand the case to the trial court to consider granting a thirty-day extension to cure the deficiencies in the report. *Leland v. Brandal,* 257

S.W.3d 204, 207–08 (Tex.2008); *see also Lewis v. Funderburk*, 253 S.W.3d 204, 208 (Tex.2008) (A deficiency in any requirement of Section 74.351 may be cured by amending an expert report or by serving a report from a separate expert.). On remand, the trial court may consider whether to grant an extension of time to cure the deficiencies in the expert report.

We reverse the trial court's orders and remand the case to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.