COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

TENET HOSPITALS LIMITED, A §
TEXAS LIMITED PARTNERSHIP, No. 08-10-00084-CV
D/B/A/ SIERRA PROVIDENCE EAST §
MEDICAL CENTER, Appeal from the
§
Appellant, County Court at Law No. 7
§
v. of El Paso County, Texas
§
(TC# 2009-3574)
NATHANIEL PHILIP LOVE, §
INDIVIDUALLY AS ADMINISTRATOR
OF THE ESTATE OF BRENDA §
JACQUELINE MELENDEZ,
DECEASED, AND ON BEHALF OF ALL §
STATUTORY WRONGFUL DEATH
BENEFICIARIES OF BRENDA §
JACQUELINE MELENDEZ,
DECEASED,

Appellee.

## O P I N I O N

Appellant, Tenet Hospitals Limited, d/b/a/ Sierra Providence East Medical Center, appeals

the trial court's denial of its motion to dismiss Nathaniel Love's health care liability case. In three

issues on appeal, Sierra Providence contends that the expert reports submitted were inadequate and

fatally deficient. For the following reasons, we reverse.

**BACKGROUND**

Approximately one week after having a surgical tubal ligation procedure on June 4, 2008,

Brenda Melendez was admitted to Sierra Providence East with complaints of abdominal pain. As

an abdominal ultrasound revealed gallstones in Melendez's gallbladder, Dr. Jaime Gomez performed

a laparoscopic cholecystectomy, removing the gallbladder. Five days later, on June 18, 2008,

Melendez returned to the hospital with a sharp pain on her left side. Finding pleural effusions in her lungs, Dr. Sheppard, who was on call for Dr. Gomez, evaluated Melendez on June 19, 2008. Dr. Sheppard recommended a hepatobiliary scan, which revealed a biliary leak. He then requested a consult with a cardiologist, Dr. Frank Pallares, who evaluated Melendez the following day. Dr. Pallares diagnosed Melendez with pulmonary emboli with sinus tachycardia. On June 21, 2008, Dr. Pallares diagnosed Melendez with right-sided congestive heart failure and two days later, scheduled a thoracentesis to remove the fluid from the pleural space.

On June 23, 2008, Dr. Pallares performed the thoracentesis. When that procedure failed to drain a sufficient amount of fluid, Dr. Pallares notated on Melendez's chart that a pulmonologist should be consulted. However, because a pulmonologist was not available at the hospital at that time, Dr. Pallares ordered Melendez transferred to another facility that day. When she arrived at the other hospital, Melendez suffered cardiac arrest. Her condition deteriorated, and she died five days later.

Love, as Administrator of Melendez's Estate, sued Sierra Providence, alleging that the hospital did not have the necessary physicians on staff or on call for medical care and treatment, should have made arrangements to transfer Melendez sooner, and failed to provide appropriate medical care and treatment.[1] Love timely served expert reports and the curricula vitae of Drs. Joel Karliner and Steven Simons. Sierra Providence, however, objected to both reports, asserting that the physicians were not qualified to opine on the standard of care or any breach of it by the hospital, and that even if they were qualified, the reports failed to set out the standard of care or causation as to the hospital. Sierra Providence then moved to dismiss Love's claims, asserting that Love failed to comply with the expert-report requirements set out in Section 74.351 of the Texas Civil Practices

---

[1] Love also sued Dr. Pallares for negligence, as well.

and Remedies Code.[2] Specifically, the hospital argued that the proffered experts were not qualified to opine on hospital operations, noting that the reports did not demonstrate any experience with or particularize knowledge of the standards that apply to hospital staffing decisions, and that the reports did not adequately address the standard of care or causation as to the hospital. Love, however, responded that the physicians' experiences in practicing medicine in a hospital environment were sufficient to qualify them to support his direct negligence claims against Sierra Providence. After a hearing, the trial court denied the hospital's motion to dismiss.

## DISCUSSION

In three issues, Sierra Providence challenges the expert reports filed by Love. In Issue One, Sierra Providence contends that the experts are not qualified to render expert opinions on a hospital's decision to staff certain physician specialists or to transfer patients. In Issue Two, Sierra Providence complains that the reports not only failed to set out a standard of care applicable to the hospital, but also failed to demonstrate causation. And in Issue Three, Sierra Providence alleges that the experts are unqualified to opine on nursing standards.

### Standard of Review

A trial court's decision to grant or deny a motion to dismiss under Section 74.351 is reviewed for an abuse of discretion. *See American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *Tenet Hospitals, Ltd. v. Boada*, 304 S.W.3d 528, 533 (Tex. App. – El Paso 2009, pet. denied). We will only find an abuse of discretion if the trial court acted in an unreasonable or arbitrary manner, without reference to any guiding rules or principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003); *Boada*, 304 S.W.3d at 533. A trial court acts arbitrarily

---

[2] Section 74.351 provides that if a health care liability claimant does not serve an expert report within 120 days after his original petition is filed, the trial court must dismiss the claim with prejudice. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a)-(b) (West 2011).

and unreasonably if it could have reached only one decision, but instead reached a different one. *See Teixeira v. Hall*, 107 S.W.3d 805, 807 (Tex. App. – Texarkana 2003, no pet.); *Boada,* 304 S.W.3d at 533. To that end, a trial court abuses its discretion when it fails to analyze or apply the law correctly. *In re Sw. Bell Tel. Co.*, 226 S.W.3d 400, 403 (Tex. 2007), *citing In re Kuntz*, 124 S.W.3d 179, 181 (Tex. 2003); *Boada*, 304 S.W.3d at 533.

## Qualifications on Hospital Administration

In Issue One, Sierra Providence contends that the proffered experts lack the qualifications to opine on a hospital's policy to staff certain specialists and to transfer patients. According to Sierra Providence, Love's first complaint, that is, that the hospital failed to have an adequate number and variety of doctors on its medical staff so that physicians of every medical specialty are at all times ready and available to attend to the patient population, implicates the complex planning functions and decision-making of hospital executives that involve forecasting the community's patients needs, knowledge of the available medical professional resources in the local community, and assessments of the range of services that the hospital can or must provide. Similarly, Love's second complaint, that is, that Sierra Providence failed to timely transfer Melendez to another hospital that staffed the necessary specialists, also implicates hospital operations. Alleging that the four corners of each expert's report and curriculum vitae do not demonstrate the experts' knowledge, training, or experience in running a hospital, Sierra Providence asserts that both experts are unqualified to opine on the standard of care a hospital would have for staffing certain physician specialists and transferring patients.

### *Wavier*

Initially, we address Love's argument that Sierra Providence waived any objections to his experts' qualifications. Specifically, Love contends that the hospital only objected to the experts

failure to state any familiarity with nursing standards, hospital administration, or hospital transfer policies and standards. The hospital never complained, according to Love, that the experts failed to have knowledge of a hospital's operational decisions.

Section 74.351(a) of the Civil Practices and Remedies Code provides that the health care provider, whose conduct is implicated, must file and serve any objection to the sufficiency of the plaintiff's expert report within 21 days after the date the report was served, or "all objections are waived." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). The courts of this state have not been hesitant to find that a defendant doctor's or hospital's objections were waived when the objections were not timely filed. *See Ogletree v. Matthews*, 262 S.W.3d 316, 322 (Tex. 2007); *Gordon v. Sebile*, 311 S.W.3d 190, 193 (Tex. App. – Beaumont 2010, no pet.); *Amaya v. Enriquez*, 296 S.W.3d 781, 784 (Tex. App. – El Paso 2009, pet. denied). Here, however, the question is not whether the objections were timely filed here but whether those objections encompassed claims that the experts lacked the qualifications to opine on the hospital's staffing model for physician specialists. We find that they did.

As to Dr. Karliner, Sierra Providence objected that he was unqualified to render expert opinions on "hospital standards," "hospital administration," "hospital transfer policies and standards," and "hospital policies and procedures." Indeed, the objections stated that Dr. Karliner "does not claim to be knowledgeable or experienced in the standards of care applicable to [h]ospitals in the care, treatment and transfer of telemetry patients." Similarly, as to Dr. Simons, Sierra Providence objected that he was unqualified to render expert opinions on "hospital administration or hospital transfer standards or policies," and claimed that he was unqualified to offer expert opinions as "against the Hospital." Necessarily, hospital administration, policies, and procedures for treating patients encompasses whether a hospital must staff a specialist in certain areas.

Accordingly, we hold that Sierra Providence timely objected to the experts' qualifications in this regard.

*Applicable Law*

To be qualified as a medical expert on whether a hospital departed from an accepted standard of health care, the proffered expert must satisfy the requirements of Section 74.402 of the Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(B) (West 2011). Section 74.402 provides that:

> (b) In a suit involving a health care liability claim against a health care provider, a person may qualify as an expert witness on the issue of whether the health care provider departed from accepted standards of care only if the person:
>
> > (1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;
> >
> > (2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and
> >
> > (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.
>
> (c) In determining whether a witness is qualified on the basis of training or experience, the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness:
>
> > (1) is certified by a licensing agency of one or more states of the United States or a national professional certifying agency, or has other substantial training or experience, in the area of health care relevant to the claim; and
> >
> > (2) is actively practicing health care in rendering health care services relevant to the claim.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(b), (c) (West 2011).

To qualify as an expert, the medical expert need not practice in the same specialty as the

defendant. *Roberts v. Williamson*, 111 S.W.3d 113, 122 (Tex. 2003). Nevertheless, not every licensed doctor is automatically qualified to testify on every medical question. *Broders v. Heise*, 924 S.W.2d 148, 152 (Tex. 1996). Thus, the trial court's inquiry should not focus on the specialty of the medical expert. *Roberts*, 111 S.W.3d at 122. Instead, the trial court should determine whether the proffered expert has "knowledge, skill, experience, training, or education" regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject. *Broders*, 924 S.W.2d at 153-54 (applying Texas Rule of Evidence 702); *Blan v. Ali*, 7 S.W.3d 741, 744, 746 (Tex. App. – Houston [14th Dist.] 1999, no pet.). Therefore, a medical expert from one specialty may be qualified to testify if he has practical knowledge of what is customarily done by practitioners of a different speciality under circumstances similar to those at issue in the case. *Keo v. Vu*, 76 S.W.3d 725, 732 (Tex. App. – Houston [1st Dist.] 2002, pet. denied). Indeed, if the subject matter is common to and equally recognized and developed in all fields of practice, any physician familiar with the subject may testify as to the standard of care. *Id*.; *Blan*, 7 S.W.3d at 745. However, the proffered medical expert's expertise must be evident from the four corners of his report and curriculum vitae. *See generally Palacios*, 46 S.W.3d at 878; *Christus Health Southwest Texas v. Broussard*, 267 S.W.3d 531, 536 (Tex. App. – Beaumont 2008, no pet.).

*Application*

Here, Dr. Karliner's report shows that he is a board certified cardiologist, having a clinical practice and a faculty appointment at the University of California. His curriculum vitae shows that he has been a member and chairman of the CPR committee at University Hospital, director of the Heart Station and Coronary Care Unit at University Hospital, and a member of the Intensive Care Unit Committee, Research and Development Committee, Research Space Subcommittee, Animal Studies Subcommittee, and Pharmacy and Therapeutic Committee at the VA Medical Center.

Similarly, Dr. Simons' report demonstrates that he is a practicing Internal Medicine, Pulmonary Diseases, and Critical Care physician, and a clinical professor of medicine at UCLA. He, too, has served on various committees at hospitals, acting as director of the Pulmonary Division, Critical Care Unit, Inshape Program, Quality Assurance and Improvement Committee, and the Medical Executive Committee, and serving on the Board of Directors for Cedars-Sinai Medical Center. Moreover, each report contains one sentence, professing that the experts are familiar with the responsibilities, duties, and expectations a hospital provides to its patients.

However, apart from that one sentence, none of the reports or curricula vitae state anything concerning the experts' knowledge, training, or experience concerning a hospital's staffing of certain physician specialists or transfer policies and standards. As noted by our sister court, it is not enough to summarily state such "knowledge" when the reports and curricula vitae fail to demonstrate how the experts gained the requisite experience or training. *See Carreras v. Trevino*, 298 S.W.3d 721, 725 (Tex. App. – Corpus Christi 2009, no pet.) ("Besides summarily asserting such 'knowledge,' [the expert's] report and curriculum vitae does not demonstrate how he gained the requisite experience or training to satisfy the statute's requirement."). To support such knowledge, Love points out that the experts have worked in a hospital setting for years and have served on various hospital committees. But that, by itself, is not enough. Indeed, merely working for a hospital does not automatically qualify an expert with experience in running a hospital, nor does serving on a committee without further explanation as to whether those committees involved determining hospital policies and procedures as to staffing certain medical specialists or transferring patients. *See Broussard*, 267 S.W.3d at 536 ("The fact that [the expert] is on staff at a hospital and serves on that hospital's credentials committee does not establish that he possesses specialized knowledge of the protocols, policies, or procedures a hospital of ordinary prudence would have had in place in

determining when a facility should disregard a discharge order."); *see also HN Tex. Props., L.P. v. Cox*, No. 02-09-00111-CV, 2009 WL 3337190, at *4 (Tex. App. – Fort Worth Oct. 15, 2009, no pet.) (mem. op., not designated for publication) ("Though Dr. Mitchell is not automatically disqualified from giving an expert opinion regarding the accepted standard of care for HN's nurses simply because he is an internal medicine physician instead of a nurse, we may not through inferences or otherwise fill in the gaps in his report where he fails to detail why or how he is qualified to opine about the applicable standard of care for HN's nurses.").

The reports and curricula vitae offered here merely recite that the doctors are specialist physicians and have served on various committees. They do not demonstrate whether the doctors' experiences have involved setting policies and procedures for hospitals, requiring hospitals to staff certain specialists under certain circumstances, or running a hospital. As the reports fail to show how the experts are qualified to render an opinion on what an ordinarily prudent hospital would do for staffing certain physician specialists or transferring patients, we conclude that the trial court erred by overruling the hospital's objections to the same.[3] *See Hendrick Medical Center v. Conger*, 298 S.W.3d 784, 788-89 (Tex. App. – Eastland 2009, no pet.) (finding expert unqualified when report did not show that expert, who was a board certified internist, an emergency room physician and director, an ICU "attending," and director of hospitalists and emergency room physicians, had

---

[3] Love cites to our decision in *Boada* to argue that having years of experience working in a hospital qualifies the experts to opine on Sierra Providence's staffing model. In *Boada*, the plaintiffs brought claims under the Emergency Medical Treatment and Active Labor Act (EMTALA), which was enacted to prevent the practice of refusing to treat patients who are unable to pay in an emergency setting. *Boada*, 304 S.W.3d at 533. Although the proffered expert report did not include specific information as to the expert's knowledge of the EMTALA or his expertise in identifying violations, because he detailed thirty years of experience in the practice of emergency medicine, including positions as the medical director of hospital emergency departments, we concluded that he met the statutory criteria of actively practicing health care in rendering health care services relevant to alleged EMTALA violations. *Id*. at 541. Here, however, neither proffered expert demonstrated how he had knowledge, training, or experience in staffing a hospital with specialists or in establishing hospital policies for transferring patients. At most, the reports simply acknowledge that they are cardiologists and pulmonologists, and that they worked in hospitals. Thus, the facts in *Boada* are inapposite.

knowledge, training, or experience concerning the formulation of hospital policies and procedures in an ICU setting); *Reed v. Granbury Hosp. Corp.*, 117 S.W.3d 404, 410-11 (Tex. App. – Fort Worth 2003, no pet.) (finding expert unqualified when record did not show that purported expert, an experienced emergency room physician, had "any special knowledge about what protocols, policies, or procedures a hospital of ordinary prudence, with the Hospital's capabilities, would have had in place" for administration of a particular drug for stroke patients).

Nevertheless, Love relies on *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238 (Tex. 2008), to argue that a physician is permitted to testify concerning a hospital's duty to have services available or to transfer a patient. However, *Hogue* is distinguishable. There, the issues raised concerned the submission of jury questions and claims of legal and factual evidentiary insufficiency. *Id*. at 245-54. It did not address the sufficiency of expert reports. *Id*. Moreover, the plaintiffs in *Hogue* provided a qualified hospital expert to testify on hospital administration and the standard of care for a hospital with respect to the types of services it provided. *Id*. at 249-50. Finally, contrary to Love's assertion, *Hogue* did not conclude that a hospital must provide all services to its patients. Rather, the Court stated, "We do not hold that Texas law requires all hospitals to provide all services to all patients." *Id*. at 253. Noting that "[d]ifferent hospitals may provide some services but not others without necessarily breaching the standard of care, depending, of course, on the circumstances," the Court maintained that those standards must still be established "by *qualified* experts." *Id*. (emphasis added). Here, the experts are simply unqualified.

In short, the four corners of the reports do not demonstrate that the proffered doctors are qualified to opine on a hospital's policies for staffing certain physician specialists or transferring patients. Accordingly, we hold that the trial court erred by overruling the hospital's objections to the experts' reports and its motion to dismiss. Issue One is sustained.

**Standard of Care and Causation**

In its second issue, Sierra Providence contends that the expert reports are inadequate, alleging that although they may constitute expert reports against Dr. Pallares, they do not constitute expert reports against the hospital. Specifically, Sierra Providence asserts that the experts only cite to standards of care applicable to treating physicians, not to hospitals, and that they wholly fail to address how the hospital's alleged acts caused Melendez's injuries. Thus, Sierra Providence concludes that the reports are not good faith efforts to comply with Section 74.351.

*Applicable Law*

If a plaintiff timely files an expert report and the defendant moves to dismiss because of the report's inadequacy, a trial court must grant the motion "only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(l) (West 2011). The definition of an expert report requires that the report contain a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). As the statute focuses on what the report discusses, the only information relevant to the inquiry is within the four corners of the document. *Palacios*, 46 S.W.3d at 878.

In setting out the expert's opinions on each of the required elements, the report must provide enough information to fulfill two purposes if it is to constitute a good faith effort. *Id*. at 879. First, the report must inform the defendant of the specific conduct the plaintiff has called into question. *Id*. And second, the report must provide a basis for the trial court to conclude that the claims have merit. *Id*. Thus, if a report does not meet these purposes and omits any of the statutory

requirements, it does not constitute a good faith effort. *Id*. Nor does a report that merely states the expert's conclusions about the standard of care, breach, and causation fulfill these purposes. *Id*. Rather, the expert must explain the basis of his statements to link his conclusions to the facts. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002).

However, a plaintiff need not present evidence in the report as if it were actually litigating the merits. *Palacios*, 46 S.W.3d at 879. The report can be informal, that is, the information contained in the report does not have to meet the same requirements as the evidence offered in a summary judgment proceeding or at trial. *Id*.

### *Standard of Care*

Identification of the standard of care in a report is critical for determining whether a defendant breached a duty. *CHCA Mainland, L.P. v. Burkhalter*, 227 S.W.3d 221, 227 (Tex. App. – Houston [1st Dist.] 2007, no pet.). Without a standard of care, a court cannot determine what the defendant should have done differently. *Id*. When, as here, a plaintiff sues more than one defendant, the expert report must set forth the standard of care for each defendant. *Estorque v. Schafer*, 302 S.W.3d 19, 29 (Tex. App. – Fort Worth 2009, no pet.); *Burkhalter*, 227 S.W.3d at 227. If the standard of care is the same for each defendant, then the report must state so. *Polone v. Shearer*, 287 S.W.3d 229, 234-35 (Tex. App. – Fort Worth 2009, no pet.) (holding report that set forth single standard of care applicable to physician and physician's assistant insufficient to represent a good faith effort because "[a]lthough the standards of care might be the same for both [the physician and physician's assistant], the report does not specifically state as much").

Here, both reports primarily address the conduct of Dr. Pallares. Indeed, Dr. Karliner focused on Dr. Pallares' failure to seek consultations or transfer Melendez in a timely manner, and Dr. Simons focused on Dr. Pallares' failure to provide appropriate medical care.

Concerning the standard of care, Dr. Karliner specifically set out the standard of care for Dr. Pallares, stating that the "standard of care would be for Dr. Pallares to seek consultation with a pulmonologist or critical care specialist as soon as he recognized that the patient was exhibiting serious problems breathing and had pleural effusions not due to congestive heart failure." But he did not expressly state the standard of care applicable to Sierra Providence. At most, Dr. Karliner suggested that the "hospital also should have had a pulmonologist or critical care specialist on-call who was willing and available to see their patients." However, Dr. Karliner did not explain that statement further by identifying whether a hospital of ordinary prudence would have such a specialist on staff or on call. Nor did he state any objective practices or procedures that a hospital of ordinary prudence employs in staffing certain specialists. Thus, we find that the report failed to adequately set out a standard of care applicable to Sierra Providence. *See Palacios*, 46 S.W.3d at 880 (mere statement that precautions to prevent patient's fall were not properly used was insufficient to establish the standard of care as none would be able to determine if the expert believed that the standard of care required the hospital to have monitored the patient more closely, restrained him more securely, or done something else entirely); *Chopra v. Hawryluk*, 892 S.W.2d 229, 233 (Tex. App. – El Paso 1995, writ denied) ("It is not sufficient for an expert to simply state that he or she knows the standard of care and concludes it was [or was not] met.").

Turning to Dr. Simons' report, we note that he provided a standard of care:

> The applicable standard of care for Brenda Melendez was to provide proper medical care and treatment for her respiratory distress, pulmonary embolus and related conditions. She required the administration of aggressive anticoagulation therapy, consultations by qualified Radiology and Pulmonary physicians, and further investigation of the bile leak, which was not addressed by the employees of Sierra Providence East Medical Center or by Dr. Pallares.

However, this vague statement does not indicate whether that standard of care was applicable to

Sierra Providence, to Dr. Pallares, or to both. *See Cox*, 2009 WL 3337190, at *6 ("Although an expert is not prohibited from applying the same standard of care to more than one health care provider (so long as they all owe the same duty to the patient), there is nothing in the report stating or somehow providing that the standard of care that applies to HN's nurses is the same standard of care that applies to the physicians."). Dr. Simons' report also states that a "hospital such as Sierra Providence East Medical Center should be able to provide appropriate medical health care providers when necessary or in the alternative make timely arrangements to transfer their patients to hospital facilities that provide such services." But Dr. Simons does not explain what similar hospitals provide, whether those hospitals staff "appropriate" specialists, or state under what circumstances a hospital should provide such services. *See Kettle v. Baylor Med. Ctr. at Garland*, 232 S.W.3d 832, 838-39 (Tex. App. – Dallas 2007, pet. denied) (expert cardiologist's report stating that cardiologists and cardiologists' group collectively owed duty to "fully document" "clear cut" indication for implanting pacemaker, that pacemaker was implanted without "adequate" indication, that they all collectively owed duty to "promptly consider, diagnose, and then treat" with "pericardiocentesis" patient's pericardial tamponade that was causing progressive hypotension was ambiguous and conclusory, and did not constitute good faith effort to satisfy statutory requirements for expert report when report did not explain how documenting related to recommendation for implant, did not identify implanting physician, did not state indications for pacemaker implants or standard for assessing them, and it did not specify what defendants should have done differently or identify steps that should have been taken to diagnose patient's condition). Nor does he explain what the applicable timing for transferring patients would have been the accepted standard for a hospital "such as" Sierra Providence. *See id*. (report that stated failure to "promptly" perform pericardiocentesis caused patient's death was ambiguous and conclusory, and did not constitute good faith effort when

report did not specify a standard for determining what intervention is timely); *see also Baker v. Gomez*, 276 S.W.3d 1, 6 (Tex. App. – El Paso 2008, pet. denied) (finding report deficient when it failed to address the applicable time frame, which was a critical omission in evaluating the health care provider's performance). Thus, we conclude that Dr. Simons' report failed to adequately set out the standard of care for Sierra Providence, as well.

*Causation*

We also find that the reports fail to demonstrate a causal link between Sierra Providence's conduct and Melendez's death. "An expert report must provide a fair summary of the causal relationship between the failure of a health care provider to meet the standards of care and the injury, harm, or damages claimed." *Estorque*, 302 S.W.3d at 27; *see also Wright*, 79 S.W.3d at 53. It cannot be conclusory. *Wright*, 79 S.W.3d at 53; *Estorque*, 302 S.W.3d at 27. Rather, it must explain the basis of the expert's statements regarding causation and link his conclusions to the facts. *Wright*, 79 S.W.3d at 53; *Estorque*, 302 S.W.3d at 27-28. A causal relationship is established by proof that the negligent act or omission was a substantial factor in bringing about the harm and that absent said act or omission, the harm would not have occurred. *Costello v. Christus Santa Rosa Health Care Corp.*, 141 S.W.3d 245, 249 (Tex. App. – San Antonio 2004, no pet.). Thus, merely providing some insight into the plaintiff's claims does not adequately address causation. *Wright*, 79 S.W.3d at 53; *Estorque*, 302 S.W.3d at 28. Accordingly, causation cannot be inferred; it must be clearly stated. *Castillo v. August*, 248 S.W.3d 874, 883 (Tex. App. – El Paso 2008, no pet.). A court may not fill in gaps in a report by drawing inferences or guessing what the expert meant or intended. *Austin Heart, P.A. v. Webb*, 228 S.W.3d 276, 279 (Tex. App. – Austin 2007, no pet.).

As previously noted Dr. Karliner's report mainly focused on Dr. Pallares' treatment of Melendez. The only specific breach that Dr. Karliner mentioned in support of causation against the

hospital claimed that if Sierra Providence "had a pulmonologist or critical care specialist on call and available to see and treat this patient or had transferred this patient before her condition worsened, Brenda Melendez would more likely than not be alive today." But such a broad statement does not set out specifically the causal relationship between the hospital's conduct and Melendez's death. Dr. Karliner provided no analysis of how Sierra Providence should have made a physician available for a consult with other physicians, how either of those consults would have saved Melendez's life, or how the hospital could have effectuated the transfer separate and apart from Dr. Pallares. In short, by opining that Melendez would not have died, Dr. Karliner simply expressed an inference without stating the underlying facts upon which that inference was based. Thus, the statement is conclusory. It is without any medical explanation about whether a consult or transfer would have resulted in different care and treatment, or a different outcome. Accordingly, we find that there is a broad analytical gap between the alleged breach and the ultimate harm and hold that the report is insufficient to establish causation. *See Estorque*, 302 S.W.3d at 28 (finding expert report's failure to explain how or why the physicians' failure to consult a urologist or gynecologist caused worsening or progression of patient's listed conditions and therefore was insufficient to establish causation); *Regent Health Care Center of El Paso, L.P. v. Wallace*, 271 S.W.3d 434, 441 (Tex. App. – El Paso 2008, no pet.) (stating that mere reference to general concepts regarding assessment, monitoring, and interventions are insufficient as a matter of law to establish causation); *Costello v. Christus Santa Rosa Health Care Corp.*, 141 S.W.3d 245, 249 (Tex. App. – San Antonio 2004, no pet.) (finding expert report's mere assertion that the patient would have survived was conclusory when report did not explain the causal connection between hospital's claimed omissions (failure to appropriately triage and evaluate) and patient's death, offered no explanation of what medical information a more timely triage and evaluation would have revealed, nor state what would have been done had the

hospital not failed to act, what treatment would have or could have been available, that the patient was a candidate for the unknown treatment, or that the unknown treatment could have or would have been effective).

Turning to Dr. Simons' report, he states that "[a]s a result of the breaches or deviations from the standards of care by Sierra Providence East Medical Center and Dr. Pallares, it is my opinion that Brenda J. Melendez suffered very serious complications which resulted in her death." Similar to Dr. Karliner's report, Dr. Simons' report does not explain the link between the alleged breach and Melendez's death. He does not explain how or why the hospital's failure to staff a pulmonologist caused worsening or progression of Melendez's condition. *See Estorque*, 302 S.W.3d at 28. Nor does he demonstrate how a consult with a pulmonologist would have saved Melendez's life, or how Sierra Providence could have effectuated the transfer apart from Dr. Pallares. Dr. Simons' report, too, is conclusory, containing no medical explanation about whether a consult or earlier transfer would have resulted in different care and treatment, or a different outcome. *See Costello*, 141 S.W.3d at 249.

Love relies on our previous decision in *Sides v. Guevera*, 247 S.W.3d 293, 302 (Tex. App. – El Paso 2007, no pet.), to argue that a report sufficiently states causation if it is sufficiently detailed to notify the defendant of the conduct called into question, the actions the defendant should have taken, and the ways in which the defendant failed. However, in *Sides*, there was only one defendant, the doctor that treated the petitioner. *Id*. at 295. Here, Love brought suit against Dr. Pallares and the hospital. When a plaintiff sues more than one defendant, the expert report must explain the causal relationship between each defendant's individual acts and the injury. *Sanjar v. Turner*, 252 S.W.3d 460, 465 (Tex. App. – Houston [14th Dist.] 2008, no pet.) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a), (r)(6)). Thus, Love's expert reports were required to set forth the standard

of care applicable to each defendant and explain the causal relationship between each defendant's individual acts and the injury. *See Sanjar*, 252 S.W.3d at 465. They did not.

Love also cites to *Denton Reg'l Med. Ctr. v. LaCroix*, 947 S.W.2d 941 (Tex. App. – Fort Worth 1997, writ dism'd by agr.). There, the hospital was found liable based on violations of its internal policy regarding standards for the supervision of certified registered nurse anesthetist by anesthesiologists. *Id*. at 942-47. Ample expert testimony as to national standards of care for supervising non-physician nurse anesthetists was provided, in addition to testimony that the hospital's failure to follow its own protocol caused the patient's brain injury. *Id*. at 951-57. However, in this case, the reports did not provide any standards of care for a hospital "such as" Sierra Providence in staffing specialists, nor was there any suggestion that Sierra Providence did not follow its own policies and procedures in treating or transferring Melendez. Thus, *LaCroix* provides no support to Love's argument.

*Summary*

In summary, the expert reports submitted are inadequate. They do not state an applicable standard of care for hospitals, nor do they set out how Sierra Providence's alleged conduct caused Melendez's death. At most, the reports provided those elements for Dr. Pallares. Accordingly, we hold that the trial court erred by overruling Sierra Providence's motion to dismiss in this regard. Issue Two is sustained.

**Nursing**

Sierra Providence's third and final issue contends that the experts are unqualified to establish any standard of care against the nurses employed by the hospital. Love responds that his petition does not assert a claim against the hospital based on the conduct of its nursing staff. We agree with Love.

We have reviewed Love's original and amended petitions and cannot find any claim that the nurses employed by Sierra Providence failed to provide medical care and treatment to Melendez. Rather, the petitions simply assert direct liability claims against the hospital. Accordingly, we find that the trial court did not abuse its discretion by overruling Sierra Providence's objections to the expert reports and motion to dismiss on this ground. Issue Three is overruled.

## Remedy

Having concluded that the trial court erred in overruling the objections to the expert reports served by Love and therefore, in denying the motions to dismiss Love's health care liability claims against the hospital as set out in Issues One and Two, we must now determine what relief is appropriate. Sierra Providence, citing our opinion in *Boada*, concludes that the case must be dismissed with prejudice. In *Boada*, this Court stated that if any one of the statutory elements of a health care liability expert report is missing, the trial court has a ministerial duty to dismiss the lawsuit with prejudice and has no discretion to do otherwise. *Boada*, 304 S.W.3d at 541. For support, we cited to our previous decision in *In re Tenet Hosps., Ltd.*, 116 S.W.3d 821, 827 (Tex. App. – El Paso 2003, orig. proceeding), and to the Supreme Court's decision in *Palacios*. *Id*. at 541, 543. However, since *Palacios*, the Supreme Court has stated that when an appellate court reverses a trial court's denial of a motion to dismiss a health care liability claim due to omission of any of the statutory expert report requirements, the appellate court may remand the case to the trial court to consider granting a thirty-day extension to cure the deficiencies in the report. *Leland v. Brandal*, 257 S.W.3d 204, 207-08 (Tex. 2008); *see also Lewis v. Funderburk*, 253 S.W.3d 204, 208 (Tex. 2008) (stating that a deficient report may be cured by amending the report or by serving a new report from a separate expert that cures the deficiencies in the previously filed report). And more recently, a divided Court noted that the trial court is in the best position to decide whether a cure is feasible.

*See Samlowski v. Wooten*, 332 S.W.3d 404, 411-13 (Tex. 2011). Thus, we think it appropriate to remand the case to the trial court for consideration of whether the deficiencies can be cured, and thus, whether to grant an extension of time.[4] *See Wallace*, 271 S.W.3d at 441.

## CONCLUSION

Having sustained Sierra Providence's first and second issues, we reverse the trial court's judgment and remand for proceedings consistent with this opinion.

GUADALUPE RIVERA, Justice

May 27, 2011

Before Chew, C.J., McClure, and Rivera, JJ.

---

[4] Sierra Providence does not seem to assert on appeal that the reports served constituted no reports at all but merely asserts that "there is no expert report on the required elements of standard of care, breach, or causation" as to the hospital, that the reports fail to comply with Chapter 74, and that the reports are inadequate and insufficient. Thus, we do not address the "deficient versus no report at all" debate in our opinion here. *See, e.g., Simmons v. Texoma Med. Ctr.*, 329 S.W.3d 163, 181 (Tex. App. – El Paso 2010, no pet.) (discussing the deficient versus no report debate and holding that expert report by a person unrelated to the health care field constituted no report under the health care liability statute).