COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 


 
 
 BENJAMIN CLAPP,
 M.D. and JULIO GAGOT-PIZARRO, M.D.,
  
                             Appellants,
  
 v.
  
 SARAH PEREZ, AS INDEPENDENT ADMINISTRATOR
 OF THE ESTATE OF PATRICIA PEREZ, DECEASED, and
 SARAH PEREZ, ISAAC PEREZ, and JASON PEREZ, AS HEIRS AT LAW
 OF PATRICIA PEREZ,
  
                            
 Appellees.
 
 
 §
  
 §
  
 §
  
 §
  
 §
  
 § 
  
 §
  
 §
 
 
  
  
  
 No. 08-11-00133-CV
  
 Appeal from the
  
 346th
 Judicial District Court 
  
 of El
 Paso County, Texas 
  
 (TC#2009-5202) 
  
 
 


 

O
P I N I O N

            These two interlocutory
appeals concern the adequacy of an expert report filed in a medical malpractice
suit.  See Tex.Civ.Prac.&Rem.Code
Ann. § 74.351 (West 2011).  Asserting
that the expert report is inadequate, Drs. Benjamin Clapp and Julio
Gagot-Pizzaro argue that the trial court abused its discretion by denying their
motions to dismiss the lawsuit.

FACTUAL
AND PROCEDURAL BACKGROUND








            In
early December 2007, Dr. Clapp performed
gastric bypass surgery on Patricia Perez (“Perez”).  Following
bypass surgery, Perez developed an intestinal obstruction that required
Dr. Clapp to perform emergency surgery three days later.  During
emergency surgery, Perez aspirated when Dr. Gagot induced anesthesia.  Thereafter, Perez was admitted to the ICU,
where she remained in critical condition until her death two weeks later.

            Approximately two years
later, Perez’s personal representative and heirs sued Drs. Clapp and Gagot for
wrongful death.  Plaintiffs alleged that
Drs. Clapp and Gagot were negligent because they failed to insert a nasal-gastric
tube before surgery to prevent aspiration and because they failed to stop the
surgery to treat Perez as she aspirated. 
As required, Plaintiffs filed and served the report and curriculum vitae
of a single expert:  Dr. Hector J.
Herrera, a board certified anesthesiologist licensed to practice in Texas.[1]  Arguing that Dr. Herrera’s report was
deficient in several respects, Drs. Clapp and Gagot filed separate motions to
dismiss the lawsuit.  In separate orders,
the trial court denied the motions.

STANDARD
OF REVIEW

            We review a trial court’s ruling on a motion
to dismiss a health care liability claim for abuse of discretion.  Am.
Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 877 (Tex.
2001)(discussing former Article 4590i).  A
trial court has no discretion in determining what the law is or in applying the
law to the facts, and abuses its discretion if it acts in an arbitrary or
unreasonable manner without reference to any guiding rules or principles.  Bowie
Mem’l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002)(discussing former Article
4590i); Walker v. Packer, 827 S.W.2d
833, 840 (Tex. 1992).

EXPERT
REPORT REQUIREMENTS

In a suit involving a health care liability
claim against a physician, a plaintiff must provide the defendant physician
with an expert report.  See Tex.Civ.Prac.&Rem.Code
Ann. § 74.351(a).  If a plaintiff
timely furnishes an expert report, a defendant physician may file a motion
challenging the report’s adequacy.  See Tex.Civ.Prac.&Rem.Code
Ann. § 74.351(a).  A report is
adequate if it represents “an objective good faith effort to comply with the
definition of an expert report . . . .”  See id. at § 74.351(l).  As defined, an expert report “provides a fair
summary of the expert’s opinions . . . regarding applicable standards of care,
the manner in which the care rendered by the physician . . . failed to meet the
standards, and the causal relationship between that failure and the injury,
harm, or damages claimed.”  Id. at § 74.351(r)(6).  A report that does not represent a good faith
effort to comply with the definition of an expert report is inadequate, and a
trial court must grant a motion challenging the adequacy of the expert
report.  Tex.Civ.Prac.&Rem.Code Ann. § 74.351(l).

If an expert report
is to constitute a good faith effort, it
must provide enough information regarding the expert’s opinions on the three statutory elements – standard of care,
breach, and causation – to fulfill two purposes.  Palacios,
46 S.W.3d at 879.  First, the report must
inform the defendant of the specific conduct the plaintiff calls into question.  Id.
 Second,
the report must provide a basis for the trial judge to determine that the
claims have merit.  Id.  Although the report need not marshal all the plaintiff’s proof, if
the report does not meet these two purposes and omits any of the statutory
requirements, it does not constitute a good faith effort.  Id.  Moreover, a report that merely states the
expert’s conclusions concerning the standard of care, breach, and causation does
not constitute a good faith effort.  Id.  To constitute a good faith effort, a report
must explain the basis of the expert’s statements and link his or her conclusions
to the facts.  Bowie, 79 S.W.3d at 52.  In determining whether the report constitutes
a good faith effort, the trial court is limited to the information contained
within the four corners of the report and may not draw inferences to supply
absent necessary information.  Palacios, 46 S.W.3d at 878; Bowie, 79 S.W.3d at 53.

 

SINGLE STANDARD OF
CARE, BREACH, AND CAUSATION

 

            Drs. Clapp and Gagot
each contend that Dr. Herrera’s report is deficient because it requires them to
speculate about what each of them is alleged to have done wrong by attributing
to them a single standard of care, breach, and causation without providing any
basis or explanation as to why they were equally responsible for Perez’s
injury.[2]  We agree.

Applicable Law

            When a plaintiff sues
more than one physician, the expert report, in order to constitute a good faith
effort, must set forth the standard of care applicable to each physician and
explain the causal relationship between each physician’s individual acts and
the injury.  Tenet Hosps. Ltd. v. De La Riva, 351 S.W.3d 398, 404 (Tex.App.--El
Paso 2011, no pet.); Tenet Hosps. Ltd. v.
Love, 347 S.W.3d 743, 753 (Tex.App.--El Paso 2011, no pet.).  This is not to state that an expert report concluding
that multiple physicians owed the same standard of care to the plaintiff and breached
that duty in the same manner can never constitute a good faith effort.  Clearly, a report that so concludes can
constitute a good faith effort.  See Methodist Hosp. v. Shepherd-Sherman,
296 S.W.3d 193, 199 (Tex.App.--Houston [14th Dist.] 2009, no pet.); San Jacinto Methodist Hosp. v. Bennett,
256 S.W.3d 806, 817 (Tex.App.--Houston [14th Dist.] 2008, no pet.); In re Stacy K. Boone, P.A., 223 S.W.3d
398, 405 (Tex.App.--Amarillo 2006, orig. proceeding).  But if an expert report concluding that different
physicians are collectively negligent is to constitute a good faith effort, it must
explain why, under the particular circumstances, the physicians owed the same
standard of care to the plaintiff and breached that duty in the same manner.  Love,
347 S.W.3d at 753; Taylor v. Christus Spohn
Health Sys. Corp., 169 S.W.3d 241, 244 (Tex.App.--Corpus Christi 2004, no
pet.).  An expert report that fails to
provide a reasoned explanation, supported by specific facts, why different
physicians are collectively negligent is inadequate.  Love,
347 S.W.3d at 753; Taylor, 169 S.W.3d
at 244.

Discussion

In this case, Dr. Herrera’s report is inadequate
because, in addressing each of the statutory elements, it fails to provide a
reasoned explanation, supported by specific facts, why Drs. Clapp and Gagot – physicians
with differing specialties – owed the same standard of care to Perez, how each
breached that standard of care, and how their respective breaches caused to Perez’s
death.

1.  Standard of Care

Dr. Herrera’s report does not adequately set
out the respective standards of care for Drs. Clapp and Gagot and
therefore does not constitute a good faith effort to provide a fair
summary of his opinion on the standard
of care.  Identifying the standard of care
in a report is essential because whether a defendant breached his duty cannot
be determined absent specific information about what the defendant should have
done differently.  Palacios, 46 S.W.3d at 880; Love,
347 S.W.3d at 753.  Here, Dr. Herrera identifies
the applicable standard of care in his report as follows:

The standard of care in the State of Texas
requires measures to prevent and ameliorate aspiration of gastric contents
during induction of general anesthesia in patients with gastric and bowel
obstructions.  These measures include: intravenous
antacids, placement of a nasal-gastric tube followed by suctioning immediately
prior to induction of anesthesia and use of a rapid sequence induction with
cricoid pressure during induction of anesthesia.

 

This vague statement does not indicate whether the standard of care was
applicable to Dr. Clapp, Dr. Gagot, or to both. 
If the standard of care was the same for Drs. Clapp and Gagot,
then Dr. Herrera was required to have so stated in his report.  See Love, 347 S.W.3d at 753.  But rather than explicitly state so, Dr. Herrera only implies that Drs. Clapp and
Gagot were jointly responsible for making certain that Perez had a
nasal-gastric tube inserted before surgery. 
However, as noted above, we are prohibited from drawing inferences to
supply absent necessary information.  See Palacios, 46 S.W.3d at 878; Bowie, 79 S.W.3d at 53.

Even were we permitted to infer that Drs.
Clapp and Gagot were jointly responsible for inserting the nasal-gastric tube,
Dr. Herrera’s report remains inadequate for two reasons.  First, Dr. Herrera never explains in his
report why under the particular facts present in this case – emergency surgery
to remove an intestinal obstruction – Drs. Clapp and Gagot, who practice different specialties, owed the
same standard of care to Perez.  Second,
Dr. Herrera fails to identify and discuss in his report how a surgeon carries
out his portion of the shared responsibility and how an anesthesiologist
carries out his portion.  As a result of
this omission, we are unable to determine which physician was responsible for
determining the necessity of a nasal-gastric tube and for making certain that
if a tube was necessary, it was inserted.

Relying upon Hollingsworth v. Springs, 353 S.W.3d 506 (Tex.App.--Dallas 2011, no
pet.), Appellees argue that Dr. Herrera’s report adequately establishes that
Drs. Clapp and Gagot owed the same standard of care to Perez.  Appellees’ reliance on Hollingsworth is misplaced. 
In Hollingsworth, the
plaintiff sued twelve defendants and pled her claims against them in
groups of defendants who had the same or similar duties, and made the same
specific charges of negligence against all members of each group.  353 S.W.3d at 511-13.  The three expert reports the plaintiff submitted also addressed the defendants in the groups
classified by the plaintiff.  Hollingsworth, 353 S.W.3d at 513.  In
analyzing the three reports, the court noted that the reports carefully named
and addressed all defendants and the standards of care and breach applicable to
each of them.  Id.  Significantly, the court
distinguished the reports from those reports “in which the expert offers
theoretical opinions without identifying any person who allegedly committed the
violation of the standard of care . . . [or] in which the expert groups
defendants together who have different standards of care for their dealings
with a patient.”  Id. at 513-14.

This is not the situation here.  Unlike the experts in Hollingsworth, Dr. Herrera does not carefully name and address Drs.
Clapp and Gagot and the standards of care and breach applicable to them
individually.  Rather, Dr. Herrera offers
theoretical opinions about the standard of care without identifying which
physician allegedly committed the violation of the standard of care, and groups
Drs. Clapp and Gagot together notwithstanding the different standards of care
for their interactions with the patient. 
In fact, Dr. Herrera’s report is more akin to the report found
inadequate by the court in Taylor v. Christus
Spohn Health Sys. Corp., 169 S.W.3d 241, 245-46 (Tex.App.--Corpus Christi
2004, no pet.)(expert presented single standard of care for emergency room
physician, hospital, cardiology association, and others).  Accordingly, we are not swayed that Hollingsworth controls.

2.  Breach

Dr. Herrera’s report fails to establish specifically
what Drs. Clapp and Gagot did or did not do in failing to ensure that a
nasal-gastric tube was inserted before surgery and thus does not constitute
a good faith effort to provide a fair summary of his opinion on the breach of the standard of care.  If an expert report is to summarize fairly
the expert’s opinion regarding the manner in which a physician breached the
standard of care, the report must specify what action or inaction constituted a
breach of the standard of care.  Jernigan v. Langley, 195 S.W.3d 91, 93
(Tex. 2006)(per curiam)(discussing predecessor statute).  Here, Dr. Herrera concludes in his report
that Drs. Clapp and Gagot breached the standard of care as follows:

Mrs. Perez’s gastric obstruction was
diagnosed following an abdominal CT scan done early in the morning on
12/06/2007.  The scan showed ‘a very
markedly distended Roux limb pouch’, as reported by the [sic] Dr. Benjamin
Clapp, the surgeon.  Given this
information, Dr. Julio Gagot the anesthesiologist, and Dr. Clapp breached the
standard of care by failing to place a nasal-gastric tube prior to the
emergency surgery.

 

Although Dr. Herrera asserts that Drs. Clapp and Gagot breached the
standard of care by failing to insert the nasal-gastric tube before surgery, he
never identifies or explains what Drs. Clapp and Gagot each specifically did or
failed to do in breaching the standard of care.

For instance, Dr. Herrera never asserts in
his report that Dr. Clapp or Dr. Gagot personally failed to order a nasal-gastric
tube before surgery or, if ordered, failed to make certain it was inserted.  Likewise lacking in the specificity required
to attribute negligence to a particular physician in failing to insert a
nasal-gastric tube is Dr. Herrera’s conclusion that the tube should have been
inserted before surgery because Dr. Clapp reported that Perez’s CT scan showed
that she had “a very markedly distended Roux limb pouch.”  Although Dr. Herrera singles out Dr. Clapp
as the defendant responsible for interpreting the CT scan, he never asserts
that Dr. Clapp had an obligation to report this information to Dr. Gagot and
failed to do so.  Along the same lines,
Dr. Herrera never asserts that Dr. Gagot was ever provided the CT scan or had
an independent duty to review it or that Dr. Gagot was aware of the distended
pouch and chose not to insert the tube.

 

3.  Causation

Dr. Herrera’s report also fails to
demonstrate a causal link between Drs. Clapp’s and Gagot’s conduct and Perez’s
death and therefore does not constitute a good faith effort to provide a
fair summary of his opinion on
causation.  In providing a fair summary
of the causal relationship between a physician’s breach of the standard of care
and the harm alleged, an expert report must establish the causal relationship by
proof that the negligent act or omission was a substantial factor in bringing
about the harm and that absent said act or omission, the harm would not have
occurred.  Bowie, 79 S.W.3d at 53; Love,
347 S.W.3d at 755.  Here, Dr. Herrera describes
the causal relationship between Drs. Clapp’s and Gagot’s negligence and Perez’s
death as follows:

[Placing
a nasal-gastric tube prior to the emergency surgery] would have emptied the
stomach (gastric gland) of its contents and prevented the aspiration that did
eventually occur and led to aspiration pneumonia, prolonged intubation with
ARDS, multi-organ failure and then death of Mrs. Perez.

 

Although broad and sweeping in scope, this statement is nothing more than
Dr. Herrera’s conclusion that the
breach caused the injury.  Moreover, Dr.
Herrera fails to link Perez’s death to any specific physician.

In essence, Dr. Herrera simply opines that
one event caused another without explaining how the failure to insert a
nasal-gastric tube resulted in aspiration, aspiration pneumonia, prolonged
intubation with ARDS[3],
multi-organ failure, and ultimately death. 
By opining that Perez died because Drs. Clapp and Gagot failed to insert
a nasal-gastric tube before surgery, Dr. Herrera simply expressed his
conclusion without stating the underlying facts necessary to establish that the
failure to place a nasal-gastric tube was a substantial factor in causing Perez’s
death, and that absent this failure, Perez would not have died.  In other words, Dr. Herrera fails to explain
the basis of his statements linking his conclusions to the facts.  See
Bowie, 79 S.W.3d at 53.

CONCLUSION

            Although we
recognize that Plaintiffs were not required to marshal all of their proof as if
they were actually litigating their claim, we can only speculate as to what Dr.
Herrera intended in his report.  The
report does not clearly specify the respective standards of care and how each
physician breached their respective standard of care.  The report does not adequately link Perez’s
death to either physician or to the failure to insert the nasal-gastric tube.

            Accordingly, we reverse the trial
court’s judgment and dismiss Plaintiffs’ claims against Drs. Clapp and Gagot.

 

 

September 19, 2012

                                                                        CHRISTOPHER
ANTCLIFF, Justice

 

Before McClure, C.J., Rivera, and Antcliff,
JJ.











[1]
The expert report at issue is the second completed by Dr. Herrera and filed by
Plaintiffs.  The first expert report
completed by Dr. Herrera was struck by the trial court; however, the trial
court granted Plaintiffs a thirty-day extension of time to file an amended
report.





[2]
Drs. Clapp and Gagot raise other issues challenging the adequacy of Dr.
Herrera’s report, namely that Dr. Herrera was not qualified to render an
opinion and that the report merely states his conclusions about causation.  In light of our disposition of this appeal on
the basis that Dr. Herrera’s report failed to differentiate between Drs. Clapp
and Gagot in setting out the standard of care, breach, and causation, we need
not address the other issues Drs. Clapp and Gagot raise.  See
Tex. R. App. P. 47.1 (stating court
of appeals must hand down written opinion that is as brief as practicable but
that addresses every issue raised and
necessary to final disposition of appeal).





[3]
ARDS is the acronym for Acute Respiratory Distress Syndrome.