

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| TENET HOSPITALS LIMITED, A TEXAS LIMITED PARTNERSHIP, D/B/A/ SIERRA MEDICAL CENTER, | § § § | No. 08-14-00048-CV |
| Appellant, | § | Appeal from the |
| v. | § | County Court at Law No. 5 |
| MARIVA J. BARAJAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 2013-DCV1930) |

**O P I N I O N**

Appellant, Tenet Hospitals Limited, d/b/a/ Sierra Medical Center, appeals the trial court's denial of its motion to dismiss Appellee Mariva Barajas's health care liability claim. Sierra Medical Center (SMC) raises a single issue for our review. For the following reasons, we affirm in part and reverse in part.

**BACKGROUND**

On March 17, 2011, Barajas underwent a total right knee replacement operation at SMC. The following day, while still a patient at SMC, Barajas requested assistance to move from a recliner to the bedside commode. A nurse attempted to help Barajas get up with a walker; however, the recliner was not locked and Barajas "slid down" to the floor causing her newly-operated knee to bend. A Hoyer lift was used to get Barajas, an obese patient, back into the

hospital bed. After the nurse notified Dr. Alvaro Hernandez, the doctor who had performed Barajas's knee replacement, of the fall, no new orders were given.

On March 21, 2011, Barajas was discharged from SMC and sent to Las Palmas Rehab Hospital for therapy. On March 23, 2011, Barajas experienced some popping of the right knee, her therapy was stopped, and x-rays were taken. The x-ray report was normal.

In April and May 2011, Barajas followed-up her care with Dr. Hernandez. On May 2, 2011, Barajas reported she was having pain and x-rays were taken. Barajas was diagnosed with right patellar dislocation. On May 5, 2011, Dr. Hernandez performed right knee patellar dislocation surgery on Barajas. On March 29, 2012, Barajas saw Dr. Charles Zaltz, Dr. Hernandez's partner, for a follow-up. In his medical note, Dr. Zaltz recorded that Barajas fell at SMC the day after her right total knee replacement surgery and stated that the right patellar dislocation and disruption of Barajas's patellar mechanism found on May 2, 2011, was the result of her fall at SMC on March 18, 2011.

In May 2013, Barajas sued SMC for medical negligence alleging that the hospital allowed Barajas "to drop to the floor after the 3/17/11 surgery" and committed "[o]ther acts and/or omissions of negligence." Barajas timely served expert reports and the curricula vitae of Registered Nurse Donna Holguin, and Drs. Rene Arredondo and John Allen. SMC subsequently filed objections to the sufficiency of the three expert reports and moved to dismiss Barajas's claim.

Specifically, SMC argued that Drs. Allen and Arredondo were not qualified to offer opinions on the standard of care for registered nurses, and that their opinions as to causation were conclusory. SMC similarly contended Nurse Holguin was unqualified to opine on the standard of care for registered nurses in an acute care hospital setting, and that her report failed to adequately

2

address the standard of care applicable to SMC's nursing staff and any alleged breaches. After a hearing, the trial court overruled SMC's objections and denied its motions to dismiss. This interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (West 2008).

## DISCUSSION

In its sole issue on appeal, SMC challenges the expert reports filed by Barajas. Specifically, SMC contends that the expert reports are not authored by qualified experts and that the reports are conclusory as to causation.

*Standard of Review*

A trial court's decision to grant or deny a motion to dismiss under Section 74.351 is reviewed for an abuse of discretion. *See American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *Tenet Hospitals, Ltd. v. Boada*, 304 S.W.3d 528, 533 (Tex.App. – El Paso 2009, pet. denied). A trial court only abuses its discretion when it acts in an unreasonable or arbitrary manner, without reference to any guiding rules or principles. *See Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003); *Boada*, 304 S.W.3d at 533. A trial court acts arbitrarily and unreasonably if it could have reached only one decision, but instead reached a different one. *See Teixeira v. Hall*, 107 S.W.3d 805, 807 (Tex.App. – Texarkana 2003, no pet.); *Boada,* 304 S.W.3d at 533. A trial court also abuses its discretion when it fails to analyze or apply the law correctly. *In re Sw. Bell Tel. Co.*, 226 S.W.3d 400, 403 (Tex. 2007) (citing *In re Kuntz*, 124 S.W.3d 179, 181 (Tex. 2003)); *Boada*, 304 S.W.3d at 533. However, a trial court does not abuse its discretion merely because it decides a matter within its discretion differently than a reviewing court. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985), *cert.*

3

*denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

*Applicable Law*

"[A] claimant shall, not later than the 120th day after the date each defendant's original answer is filed, serve on that party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2011). If a plaintiff timely files an expert report and the defendant moves to dismiss because of the report's inadequacy, a trial court must grant the motion "only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." *Id.* § 74.351(l). The definition of an expert report requires that the report contain a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed. *Id.* § 74.351(r)(6) (West 2011). As the "statute focuses on what the report discusses, the only information relevant to the inquiry is within the four corners of the document." *Palacios*, 46 S.W.3d at 878.

"In setting out the expert's opinions on each of those elements, the report must provide enough information to fulfill two purposes if it is to constitute a good faith effort." *Id.* at 879. The report must: (1) inform "the defendant of the specific conduct the plaintiff has called into question;" and (2) "provide a basis for the trial court to conclude that the claims have merit." *Id.* If a report does not meet these purposes and omits any of the statutory requirements, it does not constitute a good faith effort. *Id.* Nor does a report "that merely states the expert's conclusions

4

about the standard of care, breach, and causation" fulfill these purposes. *Id*. Rather, the expert must explain the basis of his statements to link his conclusions to the facts. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). However, "a plaintiff need not present evidence in the report as if it were actually litigating the merits." *Palacios*, 46 S.W.3d at 879. "The report can be informal," that is, "the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Id*.

## THE PROFFERED EXPERTS' QUALIFICATIONS

In Issue One, SMC argues that Nurse Holguin, and Drs. Allen and Arredondo lack the qualifications to provide opinions on the standard of care for hospital floor nurses. SMC maintains the curricula vitae and reports of the proffered experts fail to satisfy the requirements of Section 74.402.

To be qualified as a medical expert on whether a hospital departed from an accepted standard of health care, the proffered expert must satisfy the requirements of Section 74.402 of the Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(B) (West 2011). Section 74.402 provides that:

> (b) In a suit involving a health care liability claim against a health care provider, a person may qualify as an expert witness on the issue of whether the health care provider departed from accepted standards of care only if the person:
>
> > (1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;[1]
> >
> > (2) has knowledge of accepted standards of care for health care providers for

---

[1] We agree with the parties that this subsection of section 74.402 is inapplicable in this case because the health care provider here is SMC, a hospital, and not an individual. *See Renaissance Healthcare Sys., Inc. v. Swan*, 343 S.W.3d 571, 588 (Tex.App. – Beaumont 2011, no pet.); *TTHR, L.P. v. Coffman*, 338 S.W.3d 103, 112 (Tex.App. – Fort Worth 2011, no pet.).

the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.

(c) In determining whether a witness is qualified on the basis of training or experience, the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness:

(1) is certified by a licensing agency of one or more states of the United States or a national professional certifying agency, or has other substantial training or experience, in the area of health care relevant to the claim; and

(2) is actively practicing health care in rendering health care services relevant to the claim.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(b)(c) (West 2011).   "Practicing health care" includes:

(1) training health care providers in the same field as the defendant health care provider at an accredited educational institution; or

(2) serving as a consulting health care provider and being licensed, certified, or registered in the same field as the defendant health care provider.

*Id*. § 74.402(a).

Not every licensed physician is automatically qualified to testify on every medical question.  *Tenet Hospitals Ltd. v. Love*, 347 S.W.3d 743, 749-50 (Tex.App. – El Paso 2011, no pet.) (citing *Broders v. Heise*, 924 S.W.2d 148, 152 (Tex. 1996)).  In determining whether a witness is qualified to testify as an expert, the trial court focus should be on whether the expert has "knowledge, skill, experience, training, or education" regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject.  *Id*. at 750.  Accordingly, a medical expert from one specialty may be qualified to provide an opinion if he has practical knowledge of what is commonly done by doctors of a different specialty.  *Id*.  If the

subject matter is common to and equally recognized and developed in all fields of practice, any physician familiar with the subject may testify as to the standard of care. *Caviglia v. Tate*, 365 S.W.3d 804, 810 (Tex.App. – El Paso 2012, no pet.) (citing *Keo v. Vu*, 76 S.W.3d 725, 732 (Tex.App. – Houston [1st Dist.] 2002, pet. denied)).

Nevertheless, the proffered medical expert's expertise must be evident from the four corners of his report and curriculum vitae. *See generally Palacios*, 46 S.W.3d at 878; *Christus Health Southwest Texas v. Broussard*, 267 S.W.3d 531, 536 (Tex.App. – Beaumont 2008, no pet.). The expert's qualifications must appear in the report and cannot be inferred. *See Salais v. Texas Dep't of Aging & Disability Servs.*, 323 S.W.3d 527, 536 (Tex.App. – Waco 2010, pet. denied). Whether a witness is qualified "to serve as an expert is within the trial court's discretion." *Palafox v. Silvey*, 247 S.W.3d 310, 314 (Tex.App. – El Paso 2007, no pet.). An expert report by a person unqualified to testify does not constitute a good faith effort to comply with the statutory definition of an expert report. *Foster v. Zavala*, 214 S.W.3d 106, 116 (Tex.App. – Eastland 2006, pet. denied) (citing *In re Windisch*, 138 S.W.3d 507, 511 (Tex.App. – Amarillo 2004, orig. proceeding) (examining predecessor to Section 74.351)).

**Nurse Holguin's Report**

SMC contends Nurse Holguin is unqualified to testify as an expert on the standard of care for hospital floor nurses providing post-surgical care to patients in March 2011 because "Nurse Holguin does not meet the knowledge requirements of Section 74.402(b)(2)." SMC also asserts Nurse Holguin is not qualified to opine on the applicable standard of care based on her training and experience. In essence, SMC argues Nurse Holguin does not satisfy Section 74.402(b)(3). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(b)(3) (West 2011).

7

Pursuant to Section 74.402(b)(2), Nurse Holguin may qualify as an expert witness on the issue of whether SMC departed from accepted standards of care only if she has "knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim[.]"  *Id*. § 74.402(b)(2).  This case involves the post-operative care of an obese hospital patient who had total right knee replacement surgery. Barajas's alleged that due to the negligence of SMC and its floor nurses she required additional knee surgery after SMC and its floor nurses failed to prevent her from falling to the floor as she was assisted from a recliner to the bedside commode.

Nurse Holguin's curriculum vitae reflects that she has a B.S.N. and M.S.N., and that she has worked in various nursing positions at several acute care hospitals including SMC.  From 1991 to 1996, she held the title of Director of Quality Management at Providence Memorial Hospital where she was in charge of quality management, risk management, safety, "ProvCare and Infection Control."  She also worked as the Director of Nursing Services at a long-term care facility where she oversaw all aspects of nursing client care.  From 1999 to January 31, 2011, Nurse Holguin was the Senior Director of Quality Improvement and Occupational Health at an ambulatory clinic where she acted as the Director of Nursing, Infection Control Nurse, Safety Officer, and Director of the facility Safety Program.

In her expert report, we note Nurse Holguin does not expressly state she is familiar with the standard of care for nurses for the prevention of falls of obese patients in a hospital setting nor does she state that she has knowledge of the applicable standard of care.  However, she does detail knowledge of what SMC floor nurses should have done when assisting an obese patient, who had recently had a total knee replacement, move from a recliner to the bedside commode.

8

Specifically, Nurse Holguin's expert report provides:

> Next Nursing note is on 3-18-2011 1330 by April Hurtado (no clinical designation noted). According to the patient she had been "assisted up into a chair earlier by 6 or 7 staff members." The Nursing Note at 1330 states "Patient called for assistance to bedside commode was sitting in recliner chair, attempted to help patient with walker and the chair was not locked, patient slid down to floor knee did bend, patient okay."
>
> This event/fall occurred on 3-18-2011 the first day after the total knee replacement procedure. Any nursing staff member entering this patients' room should have taken note of the patient[']s size and could easily have asked the patient how much assistance had been provided earlier to help her into the recliner chair. These two pieces of information would have provided the basis for indicating whether more help was needed to safely assist this patient rather than receiving assistance from one female staff, who was reportedly in a state of advanced pregnancy. The patient reports that she asked whether more help should be summoned but was told by the person in the room that more help was not necessary.
>
> The nurses note indicates that the "chair was not locked" – another failure on the part of the staff member who undertook this assist – not assuring that the chair would not move as the patient attempted to stand up from the sitting position to a standing position to use the walker to then move to the bedside commode.
>
> Instead of being safely moved from the chair to the bedside commode the patient went down to the floor and the newly operated knee "bent", according to the documentation. The staff member who had undertaken the transfer did not keep the patient safe from going to the floor and while going to the floor the knee bent.
>
> …
>
> Had proper assessment been done prior to the unidentified staff member attempting to assist Ms. Barajas this unfortunate "fall" should not have occurred. The staff member failed to provide for this patient[']s safety. Ms. Barraza [sic] was provided with and signed a "Patient Safety Tips" form on admission to the hospital. This form indicates that the patient is to: "Call for help before getting up from a chair or bed" and yet when Ms. Barajas did call for help she was not kept safe because the assisting person did not take into account all of the factors about her that would have indicated the need for the assistance of more than one person. A staff member skilled in the postoperative care of Total Knee Patients should have been called on to make a determination of what type of assistance was needed if the person at the bedside was unable to determine what would be safest for this patient.
>
> Nursing Care of this newly operated orthopedic patient was not appropriate/not

9

adequate since the patient was not kept safe and ended up on the floor which was NOT the desired outcome of a transfer from a chair to a bedside commode.

Because of her experience as a registered nurse as set forth in her curriculum vitae and the detailed description of the applicable standard of care for floor nurses contained in her report, the trial court could have reasonably concluded that Nurse Holguin has "knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in [Barajas's] claim[.]" *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(b)(2). As such, we conclude Barajas satisfied Section 74.402(b)(2).

To determine whether a witness is qualified "on the basis of training or experience," the court shall consider "whether, at the time the claim arose or at the time the testimony is given, the witness: (1) is certified by a licensing agency…or has other substantial training or experience, in the area of health care relevant to the claim; and (2) is actively practicing health care in rendering health care services relevant to the claim." TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(c) (West 2011). SMC argues Nurse Holguin in not a qualified expert because "[she] is not a licensed nurse and it is unclear whether she was a licensed nurse when she gave her opinions as her [curriculum vitae] does not show when she was licensed." SMC maintains Nurse Holguin's curriculum vitae shows she did not have substantial training or experience as a hospital floor nurse at the time Barajas's claim arose on March 18, 2011, or on September 9, 2013, at the time she gave her expert opinion. SMC also advances that Nurse Holguin's report and curriculum vitae do not reflect she was actively practicing health care at the time the claim arose or at the time she gave her report.

Despite SMC's argument to the contrary, Nurse Holguin's curriculum vitae clearly indicates she was certified by a licensing agency on March 18, 2011, at the time Barajas's claim

arose as it shows that she is licensed by the Texas Board of Nursing and that her license would expire on August 31, 2013. Accordingly, Nurse Holguin meets the first prong of section 74.402(c).

Under the second prong of Section 74.402(c), Nurse Holguin must be "actively practicing health care in rendering health care services relevant to the claim." *Id*. § 74.402(c)(2). SMC contends Nurse Holguin cannot meet the second prong because she was not actively practicing health care at any relevant time.

Section 74.402(a) defines "practicing health care" as including "(1) training health care providers in the same field as the defendant health care provider at an accredited educational institution; or (2) serving as a consulting health care provider and being licensed, certified, or registered in the same field as the defendant health care provider." *Id*. § 74.402(a)(1)-(2). While nothing in Nurse Holguin's curriculum vitae or report indicate that she has experience training health care providers at an accredited education institution, they do show that she is a licensed, registered nurse, who is serving as a consulting health care provider. In her expert report, Nurse Holguin states, "I have reviewed the Nurses Notes and other portions of the Medical Record of ... Barajas…. In order to determine whether the Nursing Care provided to … Barajas was appropriate on 3-18-2011 when she was being assisted up out of a chair." Thus, it is clear Nurse Holguin was serving as a consulting health care provider at the time she gave her testimony in September 2013.[2]

Relying on *Certified EMS Inc. v. Potts*, 355 S.W.3d 683, 690 (Tex.App. – Houston [1st Dist.] 2011), *aff'd*, 392 S.W.3d 625 (Tex. 2013), Barajas argues that because Nurse Holguin was a licensed nurse at the time the claim arose and is a nurse consultant witness, she is sufficiently

---

[2] We note SMC does not dispute Barajas's statement that Nurse Holguin served as nurse consultant expert witness.

qualified to be an expert under Section 74.402(a)-(c). In *Potts*, the appellant objected to a nurse's qualifications to render an expert opinion because she failed to state that she actively practiced in a field requiring her to provide nursing care in a hospital setting. *Id*. at 690. After looking at the nurse's curriculum vitae and report, the appellate court found the trial court did not abuse its discretion in determining that a nurse was qualified to offer an expert report. *Id*. The facts in *Potts* are distinguishable from the facts in this case.

In *Potts*, the trial court found no abuse of discretion because the nurse's curriculum vitae stated that "she is a 'Nurse Consultant/Expert Witness' and a 'Quality Review Nurse' for the Texas Department of Aging and Disability Services," and both the curriculum vitae and report showed that "she is licensed as a nurse and holds a number of nursing certifications." *Id*. Here, it is unclear whether Nurse Holguin was licensed at the time she gave her expert testimony (September 9, 2013), as her curriculum vitae reflects that the expiration date of her nursing license was August 31, 2013. Additionally, nothing in Nurse Holguin's curriculum vitae or report reveal that she served as a consulting health care provider at the time Barajas's claim arose. As such, we conclude Nurse Holguin failed to satisfy the second prong of section 74.402(c) and therefore, the trial court abused its discretion in determining Nurse Holguin was qualified to offer an expert report pursuant to Section 74.402(b)(3). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(b)(3).

### Dr. Allen's Report

Dr. Allen's curriculum vitae shows that he is a British trained orthopaedic surgeon and is actively licensed in New Mexico. As part of his medical practice in the United States, Dr. Allen has, in part, worked as an Orthopaedic Fellow at Children's Hospital Medical Center and an Associate in Orthopaedics at Massachusetts General Hospital in Boston. He has served as an

12

Instructor in Orthopaedics at Harvard University. He has acted as a consultant for Liberty Mutual Rehabilitation Center and Eunice Kennedy Shriver Center for Mental Retardation in Boston. He has worked as an orthopaedic surgeon in various capacities in both the United States and United Kingdom. His current office is located in Albuquerque.

In his report, Dr. Allen provided the following standard of care:

The standard of care for the floor nurse at Sierra Medical Center is to use assistance (other personnel) to assist an obese patient back from an unlocked recliner chair to bed and to lock that chair before the patient attempts to stand up.

The nurse at Sierra Medical Center breached the standard of care by not assuring the recliner chair was locked before Ms. Barajas attempted to stand at around 1330 on 03/18/2011. The nurse also breached the standard of care by not seeking assistance of other nurses or aides to assist Ms. Barajas to ambulate from the chair to the bedside commode as she was an obese, newly postoperative knee patient.

Dr. Allen states his education and experience are relevant to the review of the medical care Barajas received by nurses at SMC. He further states that:

During the many years of [his] orthopedic surgery practice [he has] evaluated patients who have fallen after surgery and ha[s] interacted with hospital nursing staff on prevention of falls by patients before and after surgery, including patients who are obese.

SMC contends Dr. Allen "fails to meet the requirements to qualify as an expert in this case" because the four corners of his curriculum vitae and report fail to demonstrate that he is qualified to opine on the standard of care for hospital floor nurses furnishing post-surgical care to hospital patients or that he was actively rendering medical care services when the claim arose in March 2011, or when he offered his opinion in September 2013. Although SMC relies on this Court's decision in *Love* to support their argument, we find *Love* is distinguishable. In *Love*, we held the curricula vitae and reports of two physicians failed to show they were qualified to opine on hospital administration procedures regarding staffing specialists and transferring patients

13

because the curricula vitae and reports contained only one sentence stating that the experts were familiar with the responsibilities, duties, and expectations a hospital provides to its patients. *Love*, 347 S.W.3d at 750-51. We also noted the curricula vitae and reports merely recited that the doctors were specialists who served on various committees, but failed to demonstrate whether their experience involved setting hospital policies and procedures, requiring hospitals to staff certain specialists, or running a hospital. *Id*. at 751.

Here, the four corners of Dr. Allen's curriculum vitae and report indicate he is an orthopaedic surgeon actively licensed in New Mexico, that he has an office in Albuquerque, and that he has worked as an orthopaedic surgeon in various capacities. Moreover, Dr. Allen states that during his practice as an orthopaedic surgeon, he has evaluated patients who have fallen after surgery and that he has interacted with hospital nursing staff on pre- and post-operative fall prevention of patients, which included obese patients. Thus, unlike the experts in *Love*, Dr. Allen's curriculum vitae and report explain why and how he is qualified to render an opinion on the applicable standard of care.

SMC also argues Dr. Allen is unqualified to give expert testimony because he is not actively practicing health care in rendering health care services related to the claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(c)(2) (West 2011). As already discussed above, "practicing health care" includes "(1) training health care providers in the same field as the defendant health care provider at an accredited educational institution; or (2) serving as a consulting health care provider and being licensed, certified or registered in the same field as the defendant health care provider." *Id*. § 74.402(a)(1)-(2). It is clear Dr. Allen's curriculum vitae reflects he is a licensed orthopaedic surgeon who, in the past, has acted as a consultant health care

14

provider and trained orthopaedic students at Harvard. However, we do not find any indication he was serving as a consultant health care provider or training health care providers in the same field at an accredited educational institution at the time Barajas's claim arose or at the time Dr. Allen gave his testimony. *See Select Specialty Hospital-Houston Ltd. Partnership v. Simmons,* No. 01-12-00658-CV, 2013 WL 3877696, at *5 n.2 (Tex.App.—Houston [1st Dist.] Jul 25, 2013, no pet.) (expert nurse was qualified as her curriculum vitae demonstrated she was currently working as a nurse consultant).

Accordingly, we find the trial court abused its discretion in determining that Dr. Allen was qualified to opine on the applicable standard of care and that he was actively practicing health care at the time the claim arose or his testimony was given as set out in sections 74.402(a) and (c).

### Dr. Arredondo's Report

SMC challenges Dr. Arredondo's report on the same grounds as Dr. Allen's report. SMC contends Dr. Arredondo's curriculum vitae "fails to provide information on his education, experience and training that qualifies him to opine on hospital floor nurses assisting hospital patients post-surgery." SMC argues Dr. Arredondo is precluded from qualifying as an expert because he is not actively practicing health care.

In determining whether Dr. Arredondo meets the requirements of Section 74.402(b)(3), we look at whether he is (1) certified by a licensing agency or has substantial training or experience relevant to the claim, and (2) whether he is actively practicing health care relevant to the claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(c). According to his curriculum vitae, Dr. Arredondo is licensed by the Texas State Board of Medical Examiners. From 1975 to 2009, Dr. Arredondo's private practice was limited to orthopaedic surgery and physical rehabilitation. In

15

his expert report dated August 23, 2013, Dr. Arredondo states that he reviewed Barajas's case and was submitting his preliminary report. He goes on to state that he is an orthopaedic surgeon, that he has been an orthopaedic surgeon since 1975, and that he is board certified by the American Board of Orthopaedic Surgery. He also states that his education and experience are relevant to the review of medical care rendered by nurses at SMC to Barajas.

Like Dr. Allen, Dr. Arredondo explains that: "During the many years of [his] orthopedic surgery practice, [he has] evaluated patients who had falls after surgery. Over the many years of [his] orthopedic surgery practice, [he has] interacted with hospital floor nurses about prevention of falls in obese, post-operative patients." Dr. Arredondo also sets forth the identical standard of care and explanation of how the standard of care was breached as provided by Dr. Allen in his expert report.

Dr. Arredondo's curriculum vitae and report show that he is certified by a licensing agency, and possesses substantial training or experience relevant to Barajas's claim. The curriculum vitae and report also demonstrate Dr. Arredondo is actively practicing health care as he expressly states "I am an orthopedic surgeon. I have been an orthopedic surgeon since 1975. I am board certified by the American Board of Orthopaedic Surgery." Moreover, Dr. Arredondo's statement that he has reviewed Barajas's case and was submitting his preliminary report establishes he was serving as a consultant at the time he gave his expert testimony. Based on the four corners of the curriculum vitae and report, we find no abuse of discretion as the trial court could have reasonably concluded that Dr. Arredondo satisfied both prongs of Section 74.402(c) and determined that he was qualified as an expert under Section 74.402(b)(3). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(c); *Potts*, 355 S.W.3d at 690 (finding no abuse of discretion in

16

trial court's determination that nurse was qualified to offer an expert report because her curriculum vitae stated that "she is a 'Nurse Consultant/Expert Witness' and a 'Quality Review Nurse' for the Texas Department of Aging and Disability Services," and both the curriculum vitae and report showed that "she is licensed as a nurse and holds a number of nursing certifications").

## CAUSATION

SMC contends the trial court abused its discretion because the proffered expert reports are conclusory on the issue of causation. SMC also maintains Nurse Holguin's report is improper because she, as a non-physician, is not legally qualified to opine on medical causation. We agree that a nurse is not qualified to opine on medical causation. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(C) (West 2011); *Boada*, 304 S.W.3d at 543 (finding nurse unqualified to provide expert opinion on causation).

In response, Barajas maintains Nurse Holguin's opinion is not on causation, but on the standard of care and breach of that standard. We agree with Barajas. Nothing in Nurse Holguin's report summarizes the causal relationship between the breaches of the applicable standards of care and the alleged injuries, harms, and damages suffered by Barajas. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.351(r)(6), 74.403(a). Accordingly, SMC's contention is without merit. We now address the reports of Drs. Allen and Arredondo to determine whether their opinions on causation are conclusory.

SMC argues the reports of Drs. Allen and Arredondo do not represent a good faith effort to comply with the statutory requirements. According to SMC, the opinions of Drs. Allen and Arredondo are conclusory because "they wholly fail to provide any causal link between the bending of a knee from sliding down a chair and a right patellar dislocation of the knee diagnosed

17

almost two months later." SMC further argues "[t]he reports…are completely devoid of any factual statements explaining how bending the knee caused the right patellar dislocation…other than the conclusion that it did."

A causal relationship is established by proof that the negligent act or omission was a substantial factor in bringing about the harm, and that, absent this act or omission, the harm would not have occurred. *Costello v. Christus Santa Rosa Health Care Corp.*, 141 S.W.3d 245, 249 (Tex.App. – San Antonio 2004, no pet.). The mere provision of some insight into the plaintiff's claims does not adequately address causation. *Wright*, 79 S.W.3d at 53. Under *Palacios*, an expert report does not need to conclusively prove the case, however, we cannot infer causation. The report cannot "merely state conclusions about any of the elements." *Castillo v. August*, 248 S.W.3d 874, 883 (Tex.App. – El Paso 2008, no pet.). There are no magic words required to establish causation. *Wright*, 79 S.W.3d at 53. However, the expert report must explain the basis for the causation opinions by linking the expert's conclusions to the alleged breach. *Id.*

Drs. Allen and Arredondo's reports indicate the doctors reviewed Barajas's medical records from SMC, Las Palmas Rehab Hospital, Las Palmas Medical Center, Orthopaedic Surgeons Associates, and Nurse Holguin's report. The doctors state that in their opinion as orthopedic surgeons, "the fall that Ms. Barajas suffered" on March 18, 2011 at SMC "was the proximate cause of the right patellar dislocation" and tearing "that Dr. Hernandez found" in surgery on May 5, 2011. According to both physicians, the March 18, 2011 fall "resulted in pain to Ms. Barajas," the need for right knee repair surgery on May 5, 2011, and "rehabilitation, with associated medical costs."

18

In their reports, Drs. Allen and Arredondo provide an "Overview of Medical Care of [Barajas]" which contains excerpts from Barajas's medical records, including SMC's nursing notes. Both reports note that after having had right total knee replacement surgery, Barajas fell and bent her newly-operated knee when she was assisted out of an unlocked recliner chair on March 18, 2011. At that time, it was noted that Barajas was crying. On March 20, 2011, Barajas was reported to be aching and unsteady. Both expert reports also note that Dr. Hernandez's discharge summary dated March 25, 2011, does not state he was informed Barajas had fallen and bent her newly-operated knee.

In the "Opinions" section of their reports, after setting forth the applicable standard of care, Drs. Allen and Arredondo state that the SMC nurse breached the standard of care by "not assuring the recliner chair was locked before Ms. Barajas attempted to stand" and "by not seeking assistance of other nurses or aides to assist Ms. Barajas to ambulate from the chair to the bedside commode as she was an obese, newly post-operative knee patient." Drs. Allen and Arredondo then reference a note from Dr. Zaltz dated March 29, 2012, in which Dr. Zaltz stated that Barajas fell down at SMC the day after her right total knee surgery, and noted that the right patellar dislocation and disruption of the patellar mechanism that was found on May 2, 2011, was the result of the March 18 fall. Drs. Allen and Arredondo expressly state that they agree with Dr. Zaltz's opinion of the cause of Barajas's right patellar dislocation and that they agree with the statements made in Nurse Holguin's report.

We conclude that the reports of Drs. Allen and Arredondo adequately discuss causation so as to inform SMC of the conduct Barajas has called into question and to provide a basis for the trial court to conclude that Barajas's claim has merit. *See Palacios*, 46 S.W.3d at 879. Drs. Allen and

19

Arredondo's reports on causation are not conclusory. The expert reports state what should have been done by SMC and what happened as a result of their failure to adhere to the applicable standard of care. Accordingly, we conclude Drs. Allen and Arredondo's reports represented an objective good faith effort to provide a fair summary of the causal relationship between SMC's actions and Barajas's injury. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(l); *Palacios*, 46 S.W.3d at 878-79.

Lastly, SMC contends Drs. Allen and Arredondo's reports are also conclusory because they fail to rule out other potential causes of Barajas's injury. SMC points to Drs. Allen and Arredondo's reference to a note in Barajas's medical record indicating that during rehab therapy she experienced popping of her right knee. However, as correctly noted by Barajas, nothing in Section 74.351 requires a preliminary expert report to rule out every possible cause of injury, harm, or damages. *See Baylor Med. Ctr. at Waxahachie, Baylor Health Care Sys. v. Wallace*, 278 S.W.3d 552, 562-63 (Tex.App. – Dallas 2009, no pet.); TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(s) (West 2011) (limiting discovery before an expert report and curriculum vitae are filed). Moreover, a plaintiff need not present evidence in the report as if it were actually litigating the merits. *Wright*, 79 S.W.3d at 52. As the *Palacios* court stated, "the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Palacios*, 46 S.W.3d at 879.

The trial court therefore did not abuse its discretion in overruling SMC's objections regarding causation and denying its motions to dismiss. *Palacios*, 46 S.W.3d at 875; *Boada*, 304 S.W.3d at 533.

Issue One is sustained in part and overruled in part.

20

**REMEDY**

Because we have concluded that the trial court abused its discretion in overruling the objections to Nurse Holguin's and Dr. Allen's reports on the basis of their respective qualifications, and thereby, in denying SMC's motion to dismiss, we remand the case to the trial court to consider granting the thirty-day extension request by Barajas to cure the deficiencies in Nurse Holguin's and Dr. Allen's reports. *See Love*, 347 S.W.3d at 757 (after concluding trial court erred in overruling objections to expert report and in denying hospital's motion to dismiss, the appellate court determined the appropriate relief was to remand case to trial court for consideration of whether deficiencies were curable and to determine whether to grant extension of time).

**CONCLUSION**

We reverse the trial court's judgment as to Nurse Holguin's and Dr. Allen's expert reports and remand for proceedings consistent with this opinion. We affirm the trial court's judgment as it pertains to the expert report of Dr. Arredondo.

YVONNE T. RODRIGUEZ, Justice

November 21, 2014

Before McClure, C.J., Rodriguez, J., and Parks, Judge
Parks, Judge, sitting by assignment

21