COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| MICHAEL H. SIMPSON, M.D., Individually and d/b/a EL PASO DERMATOLOGY CENTER, | § § | No. 08-16-00076-CV |
| | § | Appeal from the |
| Appellant, | § | County Court at Law No. 6 |
| v. | § | of El Paso County, Texas |
| MARIA P. BARTON, | § | (TC# 2015-DCV-1652) |
| Appellee. | § | |

## **O P I N I O N**

In this interlocutory appeal, Dermatologist Dr. Michael Simpson challenges the adequacy of a Texas Medical Liability Act (TMLA) expert report submitted by patient Maria Barton, who allegedly developed a serious skin infection at the site of a biopsy performed by Dr. Simpson. In two issues, Dr. Simpson contends that Barton's expert, internist Dr. Louis Roddy, is not qualified to opine on the standard of care applicable to dermatologists, and that in any event, Dr. Roddy failed to causally link Dr. Simpson's failure to administer antibiotics to Barton with a later surgery Barton underwent to excise necrotic tissue from her leg. Because this report is deficient, Dr. Simpson says, the trial court abused its discretion by accepting it and pushing Barton's case forward into discovery, rather than dismissing her case outright.

We discern no abuse of discretion on this record. We will affirm.

# BACKGROUND
## *Factual History[1]*

In July 2012, Barton sought treatment for swelling and lower leg pain at the El Paso Dermatology Center. There, Dr. Simpson diagnosed Barton with erythema nodosum, a skin condition marked by red or violet subcutaneous nodules. Erythema nodosum can ordinarily be diagnosed clinically, but biopsies may be ordered in atypical cases. Several months after the initial consult, on March 4, 2013, Dr. Simpson performed a 3-millimeter "punch biopsy" of Barton's lower left leg. The pathologist's report showed only "mild nonspecific changes." Later, on May 20, 2013, Dr. Simpson performed another, deeper 5-millimeter biopsy of the lower left leg which revealed an "area of previous fat necrosis with fibrosis and microcalcifications. No inflammation or vasculitis identified." The level of follow-up care required of, and actually administered by, Dr. Simpson in the wake of these biopsies is the central issue in this appeal.

Two days after the second biopsy, on May 22, 2013, Dr. Simpson changed the bandage over Barton's biopsy site. On June 15, 2013, Barton sought further treatment from Dr. Simpson, explaining that the biopsy site on her leg had expanded. She complained that she was in extreme pain and that a bad smell was emanating from the biopsy wound. According to Dr. Roddy, the biopsy site's appearance and bad smell should have alerted Dr. Simpson to the presence of an infection treatable with antibiotics. Dr. Simpson told Barton that this was part of the healing process. He also stated that there was nothing further he could do for her. He referred Barton to the Mayo Clinic, and gave her a copy of her medical records.

Four days later, on June 19, 2013, Barton, still in severe pain with a foul smell coming from the biopsy site sought treatment at Sierra Medical Center. She was admitted, diagnosed

---

[1] We take this background information from the petition and the expert report in issue, noting that the factual claims have not yet been proven. *Tenet Hosps., Ltd. v. Bernal*, 482 S.W.3d 165, 168 n.1 (Tex.App.--El Paso 2015, no pet.).

with a severe infection, and administered antibiotics.  Because the infection was located deep in

the skin, Barton ultimately underwent surgery on August 4, 2013, to remove the infected tissue.

*Procedural History*

Barton filed suit against Dr. Simpson and timely served an expert report and curriculum

vitae from Dr. Roddy.  Relying on Barton's medical records and photographs of the biopsy site

before and after surgery, Dr. Roddy in his report faulted Dr. Simpson for failing to administer

antibiotics during Barton's visit on June 15, 2013.  Dr. Roddy explained that infections left

untreated become harder to treat with antibiotics as time goes on, opining that if Dr. Simpson had

administered antibiotics during Barton's last visit, Barton more likely than not could have

avoided surgery.  Dr. Roddy also stated that he was board certified in internal medicine, that he

had previous experience "diagnosing and treating skin infections with antibiotics under similar

circumstances[,]" and that the standard of care for treating infections was the same for

dermatologists and internists.

Dr. Simpson objected to Dr. Roddy's report, arguing that Dr. Roddy failed to set out his

qualifications to opine on the standard of care, and that he failed to establish causation.  The trial

court overruled the causation objection, but sustained the qualifications objection and permitted

Barton to submit an amended report curing the deficiencies in Dr. Roddy's initial report.  In

response, Dr. Roddy submitted the following one-paragraph supplement to his report:

> This is a supplemental report concerning my qualifications.  I have education and
> training for the diagnosis and treatment of skin infections as a result of biopsies,
> under the same or similar circumstances as in this case.  Skin infections as a result
> of biopsies such as in this case are diagnosed and treated the same by internists
> and dermatologists.  The diagnosis and treatment of skin infections as a result of
> biopsies under the same or similar circumstances as in this case are equally
> developed in dermatology and internal medicine.

Dr. Simpson again objected to the sufficiency of Dr. Roddy's report, and moved to

dismiss the case. The trial court found that the supplemental report cured the deficiencies in Dr. Roddy's initial report, and denied the motion to dismiss. This appeal followed. We have interlocutory jurisdiction. TEX.CIV.PRAC.&REM.CODE ANN. § 51.014(a)(8)(West Supp. 2015).

**DISCUSSION**

"In response to a perceived medical malpractice crisis in Texas," the Legislature in 2003 passed the Texas Medical Liability Act, "which created a new set of pretrial procedures aimed at allowing [defendant] health care providers to test a broad class of 'healthcare liability claims' for frivolousness at the pleading stage." *Mendez-Martinez v. Carmona*, No. 08-15-00265-CV, 2016 WL 1613422, at *3 (Tex.App.--El Paso Apr. 22, 2016, no pet.). The TMLA requires all plaintiffs bringing healthcare liability claims, including malpractice claims against doctors, to submit an expert report confirming the viability of their claims within 120 days after filing suit or else face dismissal. TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(a)-(b)(2)(West Supp. 2015). "A valid expert report under the TMLA must provide: (1) a fair summary of the applicable standards of care; (2) the manner in which the physician or health care provider failed to meet those standards; and (3) the causal relationship between that failure and the harm alleged." *TTHR Ltd. P'ship v. Moreno*, 401 S.W.3d 41, 44 (Tex. 2013); TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(r)(6). The report or an attached curriculum vitae must also establish the expert's qualifications in the relevant subject matter area. TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(a). "The purpose of the TMLA's expert report requirement is both to place healthcare providers on notice of what specific conduct is at issue in a particular case, and to provide judges who may have no medical training or knowledge of healthcare administration with the information needed to determine whether a healthcare liability claim is wholly frivolous." *Mendez-Martinez,* 2016 WL 1613422, at *4.

4

If a plaintiff's initial expert report is deficient, but the trial court finds it was a good faith attempt to comply with the TMLA's requirements, the trial court will grant one thirty-day extension so the plaintiff can file a supplemental report curing any deficiencies. TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(c). Failure to timely file a compliant report that cures a previous report's deficiencies results in dismissal of the plaintiff's claim with prejudice. TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(b)(2) & (c). We review the trial court's denial of a TMLA motion to dismiss for abuse of discretion. *Tenet Hosps., Ltd. v. Barajas*, 451 S.W.3d 535, 539 (Tex.App.--El Paso 2014, no pet.).

In interpreting reports, we bear in mind that the Legislature's intent in enacting the TMLA's summary provisions on expert reports was to shield healthcare providers from frivolous lawsuits while also protecting a plaintiff's right to redress. "The Act was not intended to create a procedural minefield by which colorable medical malpractice claims are lost through attrition." *Mendez-Martinez*, 2016 WL 1613422, at *4.

### *Dr. Roddy's Qualifications*

In Issue One, Dr. Simpson urges us to reverse the trial court and dismiss this case because Dr. Roddy failed to establish that he is qualified to opine on the standard of care and causation issues applicable to skin infections. Specifically, Dr. Simpson argues that Dr. Roddy is incapable of judging Dr. Simpson's actions here because Dr. Roddy—an internist—never averred that he had experience working with dermatologists, never averred that he had treated patients with erythema nodosum or other skin conditions, never identified the specific infection or specific antibiotics necessary to treat Barton's infection, and never explained why the antibiotics Barton received four days after seeing Dr. Simpson were ineffective. Dr. Simpson maintains that Dr. Roddy's failure to discuss these issues evinces his lack of qualifications.

5

Barton counters that this case is not about the treatment of erythema nodosum, but rather the treatment of a post-biopsy infection. Measured against that standard, Barton insists Dr. Roddy is qualified to opine on Dr. Simpson's actions because Dr. Roddy has practical experience dealing with biopsy follow-up care and because the standard of care for treating infections is common to all medical subspecialties and applies equally to internists and dermatologists.

We agree with Barton.

The TMLA establishes two sets of criteria for expert physicians: those necessary to opine on a physician's standard of care and breach, TEX.CIV.PRAC.&REM.CODE ANN. §§ 74.351(r)(5)(A) & 74.401(a)(West 2011), and those necessary to opine on causation. TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(r)(5)(C). To opine on the standard of care for physicians, an expert must be a physician who:

(1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;

(2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

TEX.CIV.PRAC.&REM.CODE ANN. § 74.401(a).

To opine on causation, a physician must be "otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence." TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(r)(5)(C).

Not every physician is qualified to testify as to every medical question. *Barajas*, 451 S.W.3d at 541. Even so, the TMLA does not necessarily require that a plaintiff's expert and the defendant doctor be physicians practicing in the same field; a doctor from one specialty may be qualified to testify as to another practice area "if he has practical knowledge of what is

6

commonly done by doctors of a different specialty" by virtue of "knowledge, skill, experience, training, or education[.]" *Barajas*, 451 S.W.3d at 541. Additionally, "[i]f the subject matter is common to and equally recognized and developed in all fields of practice, any physician familiar with the subject may testify as to the standard of care." *Id.* In *Gonzalez*, we joined our sister courts in recognizing that "[t]he care and treatment of open wounds and the prevention of infection are subjects common to and equally recognized and developed in all fields of practice, thus any physician familiar with and experienced in the subject may testify as to the standard of care." *Gonzalez v. Padilla*, 485 S.W.3d 236, 243 (Tex.App.--El Paso 2016, no pet.), *citing Legend Oaks—South San Antonio, L.L.C. v. Molina on Behalf of Estate of Rocamontes*, No. 04-14-00289-CV, 2015 WL 693225, at *4 (Tex.App.--San Antonio Feb. 18, 2015, no pet.)(mem.op.); *see also Khan v. Ramsey*, No. 01–12–00169–CV, 2013 WL 1183276, at *6 (Tex.App.--Houston [1st Dist.] Mar. 21, 2013, no pet.)(mem.op.); *Garza v. Keillor*, 623 S.W.2d 669, 671 (Tex.Civ.App.--Houston [1st Dist.] 1981, writ ref'd n.r.e.).

Dr. Roddy is sufficiently qualified to render an expert report in this case. We concede that unlike the expert in *Gonzalez*, who was an infectious disease specialist opining on the spread of a gangrenous leg infection following a motorcycle accident, Dr. Roddy's qualifications to serve as an expert in this case are less direct. In the present case, Dr. Roddy's CV lists him as having a focus in internal medicine, but several entries would suggest an interest or subspecialty in thoracic medicine and cardiopulmonary diseases. Nevertheless, we review the trial court's ruling for abuse of discretion, and overturn the trial court's implicit ruling that Dr. Roddy was qualified only if that determination falls outside the zone of reasonable disagreement. Dr. Roddy graduated from Texas Tech University School of Medicine, completed his internship and a residence in internal medicine at the University of Texas at Houston, and is licensed to practice

medicine in the state of Texas. Dr. Roddy has been board certified by the American Board of Internal Medicine, the American Board of Critical Care Medicine, and the American Board of Pulmonary Disease. His CV lists him as being active staff at St. Joseph Hospital, Triumph Hospital, Park Plaza Hospital, and Houston Northwest Hospital. Further, Dr. Roddy specifically averred in his supplemental report that he had specifically dealt with post-biopsy wound care in his practice.

Given that knowledge of the treatment and management of infections is equally developed and applied in all fields of medical practice, including internal medicine, that Dr. Roddy averred he has dealt with the treatment of biopsy wounds before, and that Dr. Roddy is a licensed physician whose CV shows works in various hospital settings, we cannot say the trial court abused its discretion in determining he was qualified to render a report in this case.

Issue One is overruled.

### *Causation*

We turn next to causation.[2] In Issue Two, Dr. Simpson asserts that Dr. Roddy's report is defective because it fails to logically and in sufficient detail link the lack of antibiotics given on June 15, 2013, with the surgery Barton underwent on August 4, 2013. We disagree.

"A causal relationship is established by proof that the negligent act or omission was a substantial factor in bringing about the harm, and that, absent this act or omission, the harm would not have occurred." *Barajas*, 451 S.W.3d at 547. An expert's bare *ipse dixit* proclamation that "in medical probability" one event caused another is not enough to establish causation; "the expert must go further and explain, to a reasonable degree, how and why the breach caused the injury based on the facts presented." *Jelinek v. Casas*, 328 S.W.3d 526, 539–40 (Tex. 2010). "We consider two factors in assessing whether a statement on causation is

---

[2] Dr. Simpson does not challenge Dr. Roddy's articulation of the standard of care or breach in this case.

8

sufficient: (1) whether the expert established a logical, complete chain between a negligent act and the plaintiff's injury; and (2) whether the report gave the trial court sufficient medical details to allow the court to decide if the case was frivolous." *Mendez-Martinez*, 2016 WL 1613422, at *5.

Dr. Simpson, in support of his contention that the causal link here has not been logically established, cites a handful of cases in which this Court and our sister courts found that causation statements were insufficient. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48 (Tex. 2002); *Ortiz v. Patterson*, 378 S.W.3d 667 (Tex.App.--Dallas 2012, no pet.); *Hagedorn v. Tisdale*, 73 S.W.3d 341, 352 (Tex.App.--Amarillo 2002, no pet.); *Clark v. HCA, Inc.*, 210 S.W.3d 1 (Tex.App.--El Paso 2005, no pet.); *Rollins v. Zafar*, No. 05-04-00123-CV, 2005 WL 1425854 (Tex.App.--Dallas 2005, no pet.)(mem. op.). We first note that all these cases involve appellate affirmation of dismissal orders under the abuse of discretion standard, unlike this case, which involves an attempt by a healthcare provider, operating under the same standard of review, to overturn the trial court's *refusal* to dismiss. As such, the value of these cases in this procedural posture is somewhat limited.

Secondly, these cases are factually distinguishable from the one at bar. Some of the cited cases deal with causation statements that are simply too conclusory or that contain large, obvious gaps in logic where experts jump to conclusions. *See Bowie*, 79 S.W.3d at 52-53 (in x-ray mishandling case, expert's statement that "if x-rays would have been correctly read and the appropriate medical personnel acted upon those findings then Wright would have had the possibility of a better outcome" was too speculative to establish causation); *Ortiz*, 378 S.W.3d at 673-74 (where patient died of pneumonia one day after doctor visit, expert's general references to "appropriate" tests and diagnoses were insufficient to link negligence and injury); *Clark*, 201

9

S.W.3d at 10 (expert did not articulate how the drug Lovenox caused the patient to develop acute compartment syndrome). Others failed to provide relevant technical details in the report before the logical gap between a physician's negligence and the patient's injury could be bridged. *See Hagedorn*, 73 S.W.3d at 352 (expert failed to explain how immobilization following patient's fall from scaffolding would have prevented bleeding and swelling in spinal cord, or how that spinal cord injury, in turn, led to patient becoming quadriplegic); *Rollins*, 2005 WL 1425854, at *3-*4 (expert needed to discuss in greater detail treatment and diagnosis of antibiotic-resistant MRSA infection).

By contrast, when we ground our causation analysis around the factors laid out in *Mendez-Martinez*, we find that the logical-linkage and sufficient-detail elements of causation are established by Dr. Roddy's report. We dispose of the logical-linkage element of causation first. Here, Dr. Roddy clearly explained that infections that are left untreated become more difficult to treat with antibiotics as time passes. Building off this premise, Dr. Roddy then suggested that Dr. Simpson's failure to administer antibiotics to Barton was a substantial cause of the infection in Barton's leg advancing to the point where surgery was required. At least in terms of logic, Dr. Roddy's report seamlessly links Dr. Simpson's alleged breach of the standard of care to Barton's eventual need for surgery. The causal chain is established.

As for factor two—whether the causation section is detailed enough to allow the trial court to assess whether the claim is wholly frivolous—we also find the report to be sufficient. This Court has struggled to meaningfully define the level of detail necessary for an expert report to be sufficient as to causation under the TMLA's "fair summary" standard. "Beyond admonitions that the experts provide a summary that is 'fair' 'informal,' and not as stringent as that required for summary judgment, the appellate courts have not articulated a clear standard,

10

and appear to approach these situations on a case-by-case basis." *Gonzalez*, 485 S.W.3d at 250. Where an expert report "speaks only of possibilities" or "contains an obvious gap in the chain of causation," the causation section of the report is obviously insufficient, "[b]ut, beyond these rather clear landmarks, the waters become a bit murkier." *Tenet Hosps., Ltd. v. Garcia*, 462 S.W.3d 299, 310 (Tex.App.--El Paso 2015, no pet.). Bearing in mind that the level of detail needed to assess causation will vary based on the complexity of the medical issues presented, and that we and our sister courts have previously recognized that more generalized causation statements in the wound care and infection prevention context are usually sufficient, *see Gonzalez*, 485 S.W.3d at 253 (collecting sister court case law on wound care and infection standards), we proceed.

In support of his position that Dr. Roddy's causation analysis is insufficiently detailed, Dr. Simpson points to the four-day delay between when Dr. Roddy opined he should have administered antibiotics and when Barton actually began taking antibiotics at Sierra Medical Center and contends that Dr. Roddy's report does not establish how the delay in antibiotic treatment made any difference in the ultimate outcome. Dr. Simpson's argument is well-taken, and goes to the issue of ultimate cause-in-fact. It may be proven that by the time Barton sought treatment for the biopsy site, the infection was no longer treatable with antibiotics alone. By the same token, as Dr. Roddy says in his report, it may also be that starting antibiotic treatment four days earlier would have saved the tissue. We are not positioned to resolve this question this early in the case, and neither was the trial court. At this stage of litigation, the operative question "is not whether a report could have been more detailed, but rather, whether it needed to be more detailed." *Mendez-Martinez*, 2016 WL 1613422, at *6.

We find that the report in this case was sufficiently detailed as to causation. Dr. Roddy

11

stated that Dr. Simpson's failure to administer antibiotics was a substantial factor in causing the spread of the infection that led to Barton's surgery, and the TMLA does not require an expert to state that the physician's negligence was the ultimate cause-in-fact of an injury, only that the negligence was *a substantial cause* of the injury and that but for the negligence, the injury would not have occurred. *Barajas*, 451 S.W.3d at 547.

We acknowledge that in certain cases, time delays may require an expert to fill in the analytical gaps between a negligent act and the ultimate harm suffered. *See Bernal*, 482 S.W.3d at 175 (expert failed to adequately tie doctor's premature attempt to remove catheter that tore heart tissue and led to hemorrhage during surgery with patient's death two and a half months later); *Clapp v. Perez*, 394 S.W.3d 254, 261-62 (Tex.App.--El Paso 2012, no pet.)(expert did not link doctor's failure to insert nasal-gastric tube prior to surgery in which patient aspirated on stomach contents after induction of anesthesia with patient's death two weeks later). However, in this case, the time element issue raised by Dr. Simpson did not create an analytical gap, but merely called into question whether Dr. Roddy's medical conclusion was ultimately correct. We agree with Barton that an attack on the expert's ultimate conclusion as to antibiotic efficacy is a fact question best suited for resolution at trial or on summary judgment, not at this early stage of litigation. *Gonzalez,* 485 S.W.3d at 245 (stating that whether an expert's conclusion is correct is an issue for summary judgment, not a TMLA motion to dismiss).

In summary, there are no logical gaps between Dr. Roddy's negligence allegations and his ultimate conclusion on Barton's harm, and the level of detail provided in this report is comparable to those of other wound care and infection control cases upheld by this Court, our sister courts, and the Texas Supreme Court. *See Gonzalez*, 485 S.W.3d at 253; *cf. Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 144 (Tex. 2015)(upholding causation section of expert

report in pertussis case where expert stated "it is within a reasonable degree of medical certainty and/or with 51% certainty that had Dr. Ault appropriately evaluated and diagnosed him, Nicolas Van Ness would receive the appropriate dosage and treatment of antibiotics in a timely manner, and he would not have expired . . ."). The trial court did not abuse its discretion in finding the report sufficient as to causation.

Issue Two is overruled.

## CONCLUSION

The trial court did not abuse its discretion in finding Dr. Roddy qualified to render an expert report in this case. The expert report he issued is sufficient as to causation. We find no reversible error on this record. The judgment of the trial court is affirmed.

December 9, 2016

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

13